KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
SPENCER MCMANUS - # 322824
smcmanus@keker.com
ROBYN PARISER - # 335017
rpariser@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARISSA MELUNSKY, DANA CUTOLO, KATE SHIMSHOCK, MAUREEN CAREY, CAN OZDORUK and SHUBHRANSHU GUPTA, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:26-cv-03460-PCP<br><br>**DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      August 27, 2026<br>Time:      10:00 a.m.<br>Dept.:      Courtroom 8 - 4th Floor<br>Judge:      Hon. P. Casey Pitts<br><br>Date Filed: April 23, 2026<br><br>Trial Date:  None set |

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.   RELEVANT BACKGROUND ...............................................................................2

    A.    LinkedIn is a social network for professionals that also hosts learning modules on a section of its website called LinkedIn Learning. ...............................2

    B.    All LinkedIn users must agree to LinkedIn's Privacy and Cookie Policies, which disclose how LinkedIn utilizes third party cookies and pixels to collect and share information about how users interact with LinkedIn's website. ...................................................................................................2

    C.    Meta also discloses to its Facebook users that it may track their activities on third-party websites like LinkedIn. ...................................................4

    D.    Plaintiffs ignore these disclosures and bring threadbare VPPA, CIPA, and ECPA claims against LinkedIn premised on these very practices. ..........................5

III.  ARGUMENT ..........................................................................................................6

    A.    Plaintiffs' VPPA claim should be dismissed because they fail to plausibly allege that LinkedIn disclosed their personally identifiable information. ...............6

    B.    Plaintiffs' ECPA and CIPA claims all fail because Plaintiffs consented to the data practices alleged in the Complaint. ...........................................................8

    C.    Plaintiffs' CIPA § 631 claim should also be dismissed because the party exception applies and they fail to plead the requisite statutory elements .............12

        1.    Plaintiffs cannot bring a direct Section 631 claim against LinkedIn because LinkedIn is a party to the alleged communications......................12

        2.    Plaintiffs' derivative Section 631 claim should be dismissed because they fail to plead a predicate violation by Meta or Adobe and fail to plead any facts regarding LinkedIn's knowledge or intent. ..................................................................................................13

            a.    Plaintiffs cannot allege a predicate violation of Clause One of Section 631(a) because it does not apply to Internet communications. ............................................................................13

            b.    Plaintiffs fail to state a claim under Clause Two because they do not plead facts that Meta or Adobe "reads, or attempts to read" the contents of their communications while "in transit." ..........................................................................14

            c.    Plaintiffs fail to state a claim under Clause Three because such a claim depends on a violation of Clauses One or Two. .......16

        3.    Plaintiffs' Section 631 claim also fails because they have not and cannot allege that LinkedIn had the requisite knowledge or intent. ..........17

i

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

D.      Plaintiffs' CIPA § 632 claim should be dismissed because the statute does not provide for derivative liability and, even if it did, Plaintiffs fail to plead the requisite statutory elements...............................................................18

    1.      CIPA § 632 does not provide for derivative liability................................18

    2.      Even if it did, Plaintiffs do not allege facts that LinkedIn had the requisite knowledge and intent. .................................................................19

    3.      Plaintiffs fail to plead that their alleged communications were confidential. ..............................................................................................19

E.      Plaintiffs' CIPA § 638.51(a) claim fails because Section 638.51 does not apply to the technologies alleged here and, even if it did, Plaintiffs fail to allege that any of their communications were recorded. .......................................20

F.      Plaintiffs' ECPA claim fails as a matter of law because it is a one-party consent statute. ...............................................................................................22

IV.      CONCLUSION........................................................................................................23

6243480

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Apple Data Priv. Litig.*,
  2026 WL 146025 (N.D. Cal. Jan. 20, 2026) ................................................................................20

*Brown v. Google LLC*,
  525 F. Supp. 3d 1049 (N.D. Cal. 2021) ....................................................................................19

*Campbell v. Facebook, Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ........................................................................................20

*Cody v. Ring LLC*,
  718 F. Supp. 3d 993 (N.D. Cal. 2024) ................................................................................13, 15

*Cole v. LinkedIn Corp.*,
  807 F. Supp. 3d 959 (N.D. Cal. 2025) ...........................................................................1, 5, 6, 7

*D'Antonio v. Smith & Wesson Inc.*,
  820 F. Supp. 3d 928 (N.D. Cal. 2026) ...........................................................................8, 16, 22

*Dellasala v. Samba TV, Inc.*,
  2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) ..........................................................................15

*Doe I v. Google LLC*,
  741 F. Supp. 3d 828 (N.D. Cal. 2024) ......................................................................................17

*Doe v. Eating Recovery Ctr. LLC*,
  806 F. Supp. 3d 1109 (N.D. Cal. 2025) ..............................................................................14, 21

*In re Eastport Assocs.*,
  935 F.2d 1071 (9th Cir. 1991) .............................................................................................19, 21

*Eichenberger v. ESPN, Inc.*,
  876 F.3d 979 (9th Cir. 2017) ......................................................................................................6

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) .....................................................................................................12

*Flores-Figueroa v. United States*,
  556 U.S. 646 (2009)...................................................................................................................17

*Garcia v. Enter. Holdings, Inc.*,
  78 F. Supp. 3d 1125 (N.D. Cal. 2015) ...................................................................8, 10, 11, 12

*In re Gilead Sciences Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ...................................................................................................10

6243480

*In re Google Assistant Privacy Litig.*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ................................................................17, 22

*Gutierrez v. Converse Inc.*,
    2025 WL 1895315 (9th Cir. July 9, 2025)......................................................................13

*Hammerling v. Google, LLC*,
    2024 WL 937247 (9th Cir. Mar. 5, 2024)..................................................................8, 12

*In re Hulu Privacy Litig.*,
    86 F. Supp. 3d 1090 (N.D. Cal. 2015) ...........................................................................6

*J.S. v. Spring Fertility Holdings, LLC*,
    2026 WL 1483490 (N.D. Cal. May 27, 2026)...........................................................15, 18

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ..................................................................................15, 22

*L.B. v. LinkedIn Corp.*,
    2025 WL 2899514 (N.D. Cal. Oct. 10, 2025)...........................................................8, 12

*Lakes v. Ubisoft, Inc.*,
    777 F. Supp. 3d 1047 (N.D. Cal. 2025) .....................................................................8, 9

*Martin v. Sephora USA, Inc.*,
    2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ...............................................................16

*Mastel v. Miniclip SA*,
    549 F. Supp. 3d 1129 (E.D. Cal. 2021)..........................................................................12

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ..........................................................................20

*In re Meta Pixel Tax Filing Cases*
    793 F. Supp. 3d 1147 (N.D. Cal. 2025) .........................................................................21

*Pyankovska v. Abid*,
    65 F.4th 1067 (9th Cir. 2023) ........................................................................................22

*Quigley v. Yelp, Inc.*,
    2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ...............................................................15

*Rodriguez v. Ford Motor Co.*,
    722 F. Supp. 3d 1104 (S.D. Cal. 2024)...............................................................12, 13, 18

*Rodriguez v. Google LLC*,
    2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .................................................................15

*Roe v. Amgen Inc.*,
    2024 WL 2873482 (C.D. Cal. June 5, 2024) .................................................................22

iv

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

*Shah v. MyFitnessPal, Inc.*,
   2026 WL 216334 (N.D. Cal. Jan. 27, 2026) .................................................................8, 16, 22

*Smith v. Facebook, Inc.*,
   745 F. App'x 8 (9th Cir. 2018) ...................................................................................8, 9, 12

*Smith v. Google, LLC*,
   735 F. Supp. 3d 1188 (N.D. Cal. 2024) ...............................................................................20

*Smith v. YETI Coolers, LLC*,
   754 F. Supp. 3d 933 (N.D. Cal. 2024) ....................................................................17, 18, 19

*Torres v. Prudential Fin., Inc.*,
   2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) .................................................................14, 16

*Valenzuela v. Keurig Green Mountain, Inc.*,
   674 F. Supp. 3d 751 (N.D. Cal. 2023) .................................................................................16

*Walsh v. Dollar Tree Stores, Inc.*,
   2025 WL 2939229 (N.D. Cal. Oct. 16, 2025).......................................................................17

*Wiley v. Universal Music Grp., Inc.*,
   2025 WL 3654085 (N.D. Cal. Dec. 17, 2025)..............................................................8, 16, 22

*Williams v. DDR Media, LLC*,
   2024 WL 4859078 (N.D. Cal. Nov. 20, 2024) .....................................................................14

*Yockey v. Salesforce, Inc.*,
   745 F. Supp. 3d 945 (N.D. Cal. 2024) .................................................................................20

**State Cases**

*California Mfrs. Ass'n v. Public Utils. Comm'n*,
   24 Cal. 3d 836 (1979) ..........................................................................................................19

*Flanagan v. Flanagan*,
   27 Cal. 4th 766 (2002) ..........................................................................................................19

*People v. Drennan*,
   84 Cal. App. 4th 1349 (2000) ...............................................................................................21

*People v. Nuckles*,
   56 Cal. 4th 601 (2013) ..........................................................................................................21

**Federal Statutes**

Electronic Communications Privacy Act................................................................................. *passim*

Video Privacy Protection Act ................................................................................................. *passim*

6243480

**State Statutes**

California Invasion of Privacy Act .......................................................................................... *passim*

6243480

**LINKEDIN'S NOTICE OF MOTION AND MOTION TO DISMISS TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 27 at 10:00 a.m., or as soon thereafter as this matter may be heard before the Honorable P. Casey Pitts, in Courtroom 8 of the Robert F. Peckham Federal Building and United States Courthouse, located at 280 South First Street, San Jose, California 95113, Defendant LinkedIn Corporation ("LinkedIn") will and hereby does move to dismiss the complaint ("Complaint") filed by Plaintiffs Clarissa Melunsky, Dana Cutolo, Kate Shimshock, Maureen Carey, Can Ozdoruk, and Shubhranshu Gupta (collectively, "Plaintiffs") in its entirety and with prejudice for failure to state a claim against LinkedIn under Rule 12(b)(6) of the Federal Rules of Civil Procedure. This motion is based on this Notice of Motion, the following Memorandum of Points and Authorities, LinkedIn's concurrently filed Request for Judicial Notice and the supporting Declaration of Robyn Pariser ("Pariser Decl.") and the exhibits attached thereto, all pleadings and papers on file or to be filed in this action, counsels' arguments, and any other matters properly before the Court.

6243480

## MEMORANDUM OF POINTS AND AUTHORITIES

I.    INTRODUCTION

The Complaint in this case is a weaker reprise of the complaint in *Cole v. LinkedIn Corp.*, *see* No. 5:25-cv-01097-PCP (N.D. Cal. Feb. 3, 2025), Dkt. 1 ("*Cole* Compl."), which Plaintiffs' counsel filed before this Court and then voluntarily dismissed late last year. The Court should dismiss this Complaint.

The plaintiff in *Cole* alleged that LinkedIn violated the Video Privacy Protection Act ("VPPA")—a 1980s-era statute created to prevent video rental stores like Blockbuster from disclosing their subscribers' video viewing histories—by installing the Meta Pixel and Adobe Audience Manager on a portion of its website, called LinkedIn Learning, which includes videos. LinkedIn moved to dismiss on the grounds, *inter alia*, that Cole's complaint showed that LinkedIn was not a video tape service provider, LinkedIn did not transmit users' video history and identifying information ("PII") to either Meta or Adobe, and that *Cole* was not a "consumer" within the meaning of the VPPA because the only video she identified as having watched was publicly available and required no subscription. Although the Court allowed the case to proceed past the pleadings, Plaintiffs' counsel dismissed the case shortly thereafter and filed this putative class action instead with a new set of Plaintiffs. The new Complaint largely recycles the old one, but it contains materially different allegations that make the claims here defective in two new ways.

First, as to the VPPA claim, the new Complaint omits any and all detail regarding the new Plaintiffs' alleged use of LinkedIn Learning and Facebook. Unlike in *Cole*, Plaintiffs here do not include any screenshots from their Facebook accounts purportedly showing a data transmission from LinkedIn to Meta, nor do they identify any specific video they watched or allege when they watched any video on LinkedIn Learning. For these and other reasons discussed herein, there are simply no facts in this Complaint plausibly alleging that any of *these* Plaintiffs' actionable data was transmitted to anyone.

Second, Plaintiffs try to recast their same VPPA claim as four additional claims for violations of California and federal criminal privacy laws—specifically, the Electronic

1

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

Communications Privacy Act ("ECPA") and various provisions of California's Invasion of Privacy Act ("CIPA"). But ECPA and CIPA pertain only to very specific methods of intercepting information and prohibit the disclosure of different types of information than the VPPA, so each of Plaintiffs' new claims suffers from fatal pleading defects. Chief among these is that Plaintiffs cannot plead lack of consent for purposes of CIPA or ECPA (which have a different, less specific consent requirement than the VPPA). Plaintiffs all allege that they are LinkedIn and Facebook members. Compl. ¶¶ 4-9. As such, they all agreed—in materials they have incorporated by reference in the Complaint—that LinkedIn may collect and share the alleged content (*e.g.*, URLs visited) and record information (*e.g.*, device identifier information) at issue here.

For these reasons, and as well as numerous other independent reasons detailed herein, the Court should dismiss this Complaint.

## II.    RELEVANT BACKGROUND

### A.    LinkedIn is a social network for professionals that also hosts learning modules on a section of its website called LinkedIn Learning.

LinkedIn is a social network for professionals that helps its users build relationships and skills in their chosen industries. *See* Compl. ¶ 35. While LinkedIn is free to use, individuals or businesses seeking a more advanced social networking experience can upgrade to LinkedIn Premium, which is a paid subscription membership. *Id.* ¶¶ 5, 36. LinkedIn Premium includes a number of features designed to enhance the networking, job search, and applicant search functions of the normal LinkedIn platform. LinkedIn Learning, which includes video learning modules in professional development and skill building, is also available through LinkedIn Premium. *See id.* ¶¶ 35–36.

### B.    All LinkedIn users must agree to LinkedIn's Privacy and Cookie Policies, which disclose how LinkedIn utilizes third party cookies and pixels to collect and share information about how users interact with LinkedIn's website.

Plaintiffs allege that they are all LinkedIn Premium subscribers. Compl. ¶¶ 4–9. All LinkedIn Premium subscribers are required to agree to LinkedIn's User Agreement and incorporated policies, including its Privacy Policy, Cookie Policy, Cookie Tables, and California Consumer Privacy Act Notice ("CPPA Notice"). Pariser Decl., Ex. E § 1.1 ("When you use our

2

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

Services you agree to all of these terms. Your use of our Services is also subject to our Cookie Policy and our Privacy Policy, which covers how we collect, use, share, and store your personal information."). As explained in LinkedIn's contemporaneously filed Request for Judicial Notice, Plaintiffs have incorporated all of these policies by reference into their Complaint. LinkedIn's Request for Judicial Notice (hereafter, "RJN") at 1; *see also* Compl. ¶ 100 (referencing and mischaracterizing LinkedIn's Privacy Policy and Cookie Policy).

LinkedIn's Privacy Policy states that LinkedIn "use[s] cookies and similar technologies (e.g., pixels and ad tags) to collect data . . . to recognize you and your device(s) on, off and across different services and devices where you have engaged with [LinkedIn's] Services." Pariser Decl., Ex. A § 1.4. It expressly informs users that LinkedIn may "log usage data when you visit or otherwise use our Services, including our sites, app and platform technology, such as when you view or click on content (e.g., **learning video**)", *id*. § 1.3, and that LinkedIn may use "[d]ata from your use of our Services (e.g., search history, feed, content you read, who you follow or is following you, connections, groups participation, **page visits, videos you watch**, clicking on an ad, etc.)." *Id*. § 2.4.[1] It discloses to users that LinkedIn relies on third-party service providers "to help us provide our Services (e.g., maintenance, analysis, audit, payments, fraud detection, customer support, marketing and development)" and that "[t]hey will have access to your information." *Id*. § 3.5. It also states:

> As further described in our Cookie Policy [hyperlinked], we use cookies and similar technologies (e.g., pixels and ad tags) to collect data (e.g., **device IDs**) to recognize you and your device(s) on, off and different services and devices where you have engaged with our Services. We also allow some others to use cookies as described in our Cookie Policy.

*Id*. § 1.4 (emphasis altered).

LinkedIn's Cookie Policy reiterates that LinkedIn "use[s] cookies and similar technologies such as pixels, local storage and mobile ad IDs (collectively referred to in this policy as 'cookies') to collect and use data as part of our Services" and that "[t]hird parties such as our

---

[1] Except where noted, all emphasis has been added and internal marks and citations removed.

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

customers, partners and service providers may use cookies in connection with our Services." Pariser Decl., Ex. B. It describes in plain terms what technologies are used and how cookies, pixels, and similar technologies work, including that "Pixels can also enable us and third parties to place cookies on your browser." *Id*. LinkedIn's Cookie Policy also incorporates and provides a hyperlink to LinkedIn's Cookie Table, which "lists cookies and similar technologies that are used as part of our Services." *Id*.; Pariser Decl., Ex. C. Further, LinkedIn describes to users how LinkedIn and third parties use the information collected by these technologies about their interactions with LinkedIn, including by enhancing security and customizing advertisements and other content. LinkedIn also discloses to its users that "[b]y continuing to visit or use our Services, you are agreeing to the use of cookies and similar technologies for the purposes described in this policy." Pariser Decl., Ex. B.

LinkedIn's CCPA Notice, which is incorporated into its Privacy Policy and therefore Plaintiffs' Complaint, provides additional detail for California users about the specific categories of personal information that it collects, explains how users' interactions with the website are captured and shared, and how LinkedIn and third parties use this information, including that LinkedIn may disclose users' personal information to "our partners, service providers, and related companies, in order for them to provide marketing and advertising services on our behalf." Pariser Decl., Ex. D § 5.5. It also expressly discloses that LinkedIn collects and may share "[a]udio, electronic, visual or similar information" through "[i]nformation you provide directly or through your interactions with our Services, customers, or partners." *Id.* § 3

C.    **Meta also discloses to its Facebook users that it may track their activities on third-party websites like LinkedIn.**

Plaintiffs also allege that they all have Facebook accounts. Compl. ¶¶ 4–9, 15. Like LinkedIn, Meta requires Facebook users to agree to its Terms of Service and integrated Privacy and Cookies Policies, which have also been incorporated into the Complaint. RJN at 7; *see also* Compl. ¶ 15 (citing and quoting Facebook's Community Standards, which is also incorporated into its Terms of Service). Meta's Terms provide that "[b]y using our Products, you agree that we can show you ads that we think may be relevant to you and your interests. We use your personal

4

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

data to help determine which personalized ads to show you." Pariser Decl., Ex. F. Through its Cookies Policy, Meta discloses that "[w]e use cookies if you have a Facebook or Instagram account. . . . Cookies enable Meta to offer the Meta Products to you and to understand the information that we receive about you, including information about your use of other websites and apps, whether or not you are registered or logged in." Pariser Decl., Ex. H.

In the "Information from partners, vendors, and other third parties" section of its Privacy Policy, Meta clearly discloses that it collects information about its users both on and off the Facebook platform, including information about "Websites you visit and cookie data, like through Social Plugins or the Meta Pixel." Pariser Decl., Ex. G1. Meta further discloses that these third parties may share information with Meta that "helps us match your activities with your account, if you have one." *Id.*

### D.     Plaintiffs ignore these disclosures and bring threadbare VPPA, CIPA, and ECPA claims against LinkedIn premised on these very practices.

Plaintiffs filed the Complaint in this action on April, 23 2026, roughly six months after their counsel dismissed the complaint in *Cole*. As in *Cole*, Plaintiffs here allege that LinkedIn violated their privacy by, at some unspecified time, "hosting video classes [on LinkedIn Learning that] contained code for the Meta Pixel and Adobe Audience Manager which, among other things, transmitted URL data in the form of full-string, descriptive URLs that contained detailed information regarding the webpage and video being viewed by a user, PII and other information to both Meta and Adobe." Compl. ¶ 37.

But unlike in *Cole*, the Complaint here is devoid of factual allegations regarding any Plaintiffs' use of LinkedIn or Facebook. This Complaint includes six new Plaintiffs, but each Plaintiff alleges only that he or she "subscribed to Defendant's LinkedIn Premium service for several years and, through that subscription, . . . has had access to LinkedIn Learning and has watched several prerecorded video courses through that service." *Id.* ¶¶ 4–9. Aside from Plaintiff Carey, who allegedly subscribed to LinkedIn Premium "[i]n or around January 2024," Plaintiffs do not allege when they became LinkedIn Premium subscribers. *Id.* ¶ 7. Plaintiffs do not allege when they watched any video on LinkedIn Learning or which video(s) they watched. *See id.* ¶¶

5

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

4–9. Plaintiffs also each allege that they "created a Facebook account more than 10 years ago," but they allege nothing further about when or how they used Facebook. *Id.* Plaintiffs do not include any screenshots from their Facebook account demonstrating use or showing a purported data transfer, akin to what Plaintiff Cole relied upon. *See Cole* Compl. ¶ 5.

Moreover, to explain how LinkedIn purportedly transmitted the alleged information to Meta and Adobe, Plaintiffs quote generic product descriptions about how the Meta Pixel *can* function and how advertisers *can* configure it to work with Adobe Audience Manager to customize the data collected. *Id.* ¶¶ 15–34. But the Complaint contains no facts alleging how LinkedIn actually configured these technologies on LinkedIn Learning or when it did so. *See generally, Compl.* Unlike in *Cole*, Plaintiffs do not include any screenshots from the Meta Pixel Helper purportedly showing the configuration of the Pixel on LinkedIn Learning. *Cole* Compl. ¶ 23.

Based on these allegations, Plaintiffs assert five causes of action under: (1) the VPPA (18 U.S.C. § 2710); (2) the ECPA (18 U.S.C. § 2510); (3) CIPA § 631 (Cal. Penal Code § 631); (4) CIPA § 632 (Cal. Penal Code § 632); and (5) CIPA § 638.51(a) (Cal. Penal Code § 638.51(a)).

## III.    ARGUMENT

### A.    Plaintiffs' VPPA claim should be dismissed because they fail to plausibly allege that LinkedIn disclosed their personally identifiable information.

The VPPA prohibits a "video tape service provider" from "knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider without the consumer's consent." *Cole v. LinkedIn Corp.*, 807 F. Supp. 3d 959, 963 (N.D. Cal. 2025), quoting 18 U.S.C. § 2710(b). As the Ninth Circuit explains, personally identifiable information within the specific meaning of the VPPA is "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017); *see also* 18 U.S.C. § 2710(a)(3). A violation of the VPPA therefore requires disclosure of three pieces of information: (1) "a user's identity"; (2) "the identity of the video material"; and (3) "the connection between the two." *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015).

6243480

As in *Cole*, LinkedIn maintains that Plaintiffs' allegations are insufficient to establish that it is a "video tape service provider," that Plaintiffs are "consumer[s]," that the technologies at issue here transmit data that would allow an ordinary person to identify any of the three essential elements of PII as defined by the VPPA, or that LinkedIn had the requisite scienter. Plaintiffs' allegations are conclusory and insufficient (and false). Based on the Court's ruling in *Cole* that these issues are "factual dispute[s] better suited to summary judgment or trial than a motion to dismiss," LinkedIn will not rehash those arguments here. *Cole*, 807 F. Supp. 3d at 968.

However, Plaintiffs' allegations here are materially different from those in *Cole* in that they lack well-pleaded allegations regarding the disclosure of *their own* personally identifiable information. This differentiates this case from *Cole* and dooms their VPPA claim in two ways. First, Plaintiffs allege that a user's identity is transmitted to Meta if the user accessed his or her Facebook account using the same browser that they used to watch videos on LinkedIn Learning, such that Meta can place its cookies on the user's browser. Compl. ¶ 21; *see also Cole*, 807 F. Supp. 3d at 967. In *Cole*, the Court found the Plaintiff had sufficiently alleged disclosure of *her* identity because "the complaint includes a screenshot from Cole's Facebook account showing that Facebook received data about her from LinkedIn that Facebook then linked to her account. Facebook plausibly could do so only because Cole was logged into her Facebook account when using LinkedIn Learning." *Id.* at 968. But here, the Complaint contains no such screenshots. Moreover, none of the Plaintiffs here allege that they accessed their Facebook account from the same browser before watching any video on LinkedIn Learning—or, indeed, any facts at all about their Facebook usage other than that they each created an account more than 10 years ago. Compl. ¶¶ 4–9.

Second, the Complaint fails to allege even a single fact about when or how any Plaintiff actually used LinkedIn or watched a video on LinkedIn Learning. Plaintiffs do not identify any video they watched or the date on which they watched any video. Compl. ¶¶ 4–9. Aside from Plaintiff Carey, the Complaint fails to allege when any Plaintiff subscribed to LinkedIn Premium. *See id.* The Complaint also contains no well-pleaded facts about when LinkedIn utilized the Pixel or Audience Manager or when LinkedIn purportedly "integrated" or "configured" these

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

technologies in a way that transmitted all three required elements of PII, much less that this occurred during the unspecified times when Plaintiffs watched some unspecified video.

In the absence of well-pleaded allegations that Plaintiffs *themselves* interacted with Facebook and LinkedIn Learning in the manner they allege is required to enable LinkedIn to disclose *their* PII, they have failed to plead the elements of a VPPA claim. *See D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 936 (N.D. Cal. 2026) (dismissing privacy claim because "plaintiffs do not specifically allege that *their* communications were intercepted*."); see also Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *7 (N.D. Cal. Dec. 17, 2025) (same); *Shah v. MyFitnessPal, Inc.*, 2026 WL 216334, at *7 (N.D. Cal. Jan. 27, 2026) (same).

### B.    Plaintiffs' ECPA and CIPA claims all fail because Plaintiffs consented to the data practices alleged in the Complaint.

The Ninth Circuit has consistently affirmed the dismissal of CIPA and ECPA claims where, as here, the relevant terms of service, privacy policies, or related disclosures describe the practices alleged. *See, e.g., Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming dismissal of ECPA and CIPA claims with prejudice because "the practice complained of falls within the scope of Plaintiffs' consent to Facebook's Terms and Policies."); *Hammerling v. Google, LLC*, 2024 WL 937247, at *3 (9th Cir. Mar. 5, 2024) (affirming dismissal where privacy policy "expressly disclosed Google's intention to track their activity on third-party apps"). Courts in this District have also consistently dismissed CIPA and ECPA claims on this basis. *See, e.g., Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (dismissing CIPA claim where "the express provisions of the Privacy Policy and TOS . . . ostensibly contradict [plaintiff's] bare allegations that he did not consent" to disclosure); *L.B. v. LinkedIn Corp.*, 2025 WL 2899514, at *11 (N.D. Cal. Oct. 10, 2025) (dismissing CIPA and ECPA claims because alleged conduct was disclosed in privacy policy); *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025) (dismissing VPPA, ECPA, and CIPA claims with prejudice because

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

conduct was disclosed in privacy policy).[2]

Unlike the VPPA, CIPA and ECPA are criminal statutes that prohibit unauthorized wiretapping and protect fundamentally different categories of information. ECPA specifically prohibits the interception of the "contents" of communications without the consent of at least one party. 18 U.S.C. § 2511. Section 631 of CIPA also prohibits the unauthorized interception of the "contents" of a communication, but only if the interception occurs while the communication is in transit. Cal. Penal Code § 631(a). CIPA § 632 prohibits the unauthorized use of an electronic amplifying device to eavesdrop on or record a "confidential communication." *Id.* § 632. And CIPA § 638.51 prohibits the unauthorized use of a pen register, which by statutory definition is a mechanism that intercepts "dialing, routing, addressing, or signaling information," *i.e.* record information, but specifically excludes the "contents" of a communication. *Id.* §§ 638.50, 638.51. With regard to their CIPA and ECPA claims, Plaintiffs appear to allege that the URLs of the videos that they viewed qualify as protected "contents" and that their identifying information ("IP address, device and browser identifiers, and unique user IDs") qualify as protected "record information." Compl. ¶¶ 76, 111. However, as shown below, they agreed that LinkedIn could share, and that third parties could therefore "intercept," all of this information. Their CIPA and ECPA claims should therefore be dismissed with prejudice. *See Smith*, 745 F. App'x at 9 (9th Cir. 2018) (affirming dismissal with prejudice of CIPA and ECPA claims because plaintiffs consented to the alleged data practices); *Lakes*, 777 F. Supp. 3d at 1057 (dismissing VPPA, ECPA, CIPA claims with prejudice because plaintiff consented to alleged data practices).

Plaintiffs make only conclusory allegations that they "did not consent to the interception and/or disclosure of their sensitive and confidential electronic communications." Compl. at ¶ 80; *see also id*. at ¶¶ 78, 89, 102, 115 (additional conclusory allegations that Plaintiffs did not consent). But "the Court need not accept as true any allegations contradicted by matters properly

---

[2] Disclosure of the alleged practices may also bar a VPPA claim, but the VPPA includes multiple unique requirements to effectuate consent, *i.e.* consent must be written, "in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer" and that the consent be "given at the time the disclosure is sought" or within a specific time period. 18 U.S.C. § 2710(b)(2)(B). CIPA and ECPA do not contain these consent requirements and such claims are often dismissed at the pleading stage on this basis.

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

subject to judicial notice or by exhibit that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015), quoting *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Plaintiffs' conclusory assertions that they did not consent to the alleged data practices are implausible in light of Plaintiffs' own allegations. To start, they allege that they are all LinkedIn Premium subscribers and that, at some unspecified time, they watched a video on LinkedIn Learning. Compl. ¶¶ 4-9. As such, they all agreed to LinkedIn's Privacy and Cookie Policies. Pariser Decl., Ex. E § 1.1 ("When you use our Services you agree to all of these terms. Your use of our Services is also subject to our Cookie Policy and our Privacy Policy, which covers how we collect, use, share, and store your personal information."); Pariser Decl., Ex. B ("By continuing to visit or use our Services, you are agreeing to the use of cookies and similar technologies for the purposes described in this policy."); Pariser Decl., Ex. A ("This Privacy Policy applies when you use our Services"). Plaintiffs also allege that they have Facebook accounts. Compl. ¶¶ 4–9. They therefore also accepted Meta's Terms of Service and its incorporated Privacy and Cookies Policies. *See* Pariser Decl., Ex. F ("If you do not agree to these Terms, then do not access or use Facebook or the other products and services covered by these Terms.").

First, as to the disclosure of the "contents" of their claimed "confidential" communications that they allege violated CIPA § 631, CIPA § 632, and ECPA, Plaintiffs acknowledge LinkedIn's Privacy and Cookie Policies, but claim that these policies "did not disclose that [LinkedIn] would share URLs that users visit, or the videos that they watch, with Meta and/or Adobe." Compl. at ¶ 100; *see also id.* at ¶ 42. In fact, these policies repeatedly disclose that LinkedIn and its third-party service providers can collect this information. The Privacy Policy states that "[w]e log usage data when you visit or otherwise use our Services, including our sites, app and platform technology, such as when you view or click on content (e.g., **learning video**)" and that LinkedIn may track "[d]ata from your use of our Services (e.g., search history, feed, content you read, who you follow or is following you, connections, groups participation, **page visits**, **videos you watch**, clicking on an ad, etc.)." Pariser Decl., Ex. A §§ 1.3, 2.4. It also discloses that third parties may place cookies on users' browsers and that third parties

10

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

"will have access to your information." *Id.* §§ 1.4, 3.5. Its Cookie Policy further describes that "Pixels can also enable us and third parties to place cookies on your browser," and explains how LinkedIn and third parties can use the information collected by these technologies. Pariser Decl., Ex. B. For California users, LinkedIn provides even more detailed information about its data practices through its CCPA Notice, which explains that third-party "partners, service providers, and related companies" can have access to information about users' interactions with LinkedIn, including the page visits and video watching specified in the Privacy Policy. Pariser Decl., Ex. D. It also discloses that LinkedIn collects and may share "[a]udio, electronic, visual or similar information" through "[i]nformation you provide directly or through your interactions with our Services, customers, or partners." *Id.*

As Facebook members, Plaintiffs also agreed that Meta could receive information about their interactions both with Facebook as well as with third-party websites like LinkedIn. *See* Pariser Decl., Ex. H ("We use cookies if you have a Facebook or Instagram account. . . . Cookies enable Meta to offer the Meta Products to you and to understand the information that we receive about you, **including information about your use of other websites** and apps, whether or not you are registered or logged in."). In addition to explaining what information it collects about users' interactions with third-party website and how it uses that information, Meta also discloses that it can "match your activities [on third-party websites] with your account, if you have one." *Id.*

Second, as to the alleged unauthorized disclosure of Plaintiffs' "IP address, device and browser identifiers, and unique user IDs" that they claim violated CIPA § 638.51, Compl. ¶ 111, LinkedIn's Privacy Policy specifies that it collects and allows third parties to collect, among other things, "**device IDs** . . . **ad ID**, **IP address**, **operating system** and **browser information**" so that it may "recognize you and your device(s) on, off and across different services and devices" and "provide our Members with relevant ads and better understand their effectiveness." Pariser Decl., Ex. A § 1.4; *see also* Pariser Decl., Ex. B (same).

Plaintiffs' conclusory allegations that they did not consent are thus implausible in light of LinkedIn and Meta's data policies. *See Garcia*, 78 F. Supp. 3d at 1136. ("[T]he Court need not

11

accept as true any allegations contradicted by matters properly subject to judicial notice or by exhibit that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."). Because "the practice complained of falls within the scope of Plaintiffs' consent", Plaintiffs' CIPA and ECPA claims should all be dismissed with prejudice. *Smith*, 745 F. App'x at 9; *Hammerling*, 2024 WL 937247, at *3; *Garcia*, 78 F. Supp. 3d at 1136; *L.B.*, 2025 WL 2899514, at *11.

### C.    Plaintiffs' CIPA § 631 claim should also be dismissed because the party exception applies and they fail to plead the requisite statutory elements

Section 631(a) contains three clauses covering "three distinct and mutually independent patterns of conduct: (1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, i.e., eavesdropping and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021). These are the direct causes of action. In its fourth clause, Section 631(a) also provides an express derivative cause of action "for anyone 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the' other three bases for liability." *Id.*, quoting Cal. Penal Code § 631(a). Plaintiffs fail to state either a direct or derivative claim against LinkedIn under any of these clauses.

### 1.    Plaintiffs cannot bring a direct Section 631 claim against LinkedIn because LinkedIn is a party to the alleged communications.

A party to a communication is "exempt" from liability under Section 631, as they cannot eavesdrop on their own communications. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020) (Section 631(a) contains "an exemption from liability for a person who is a 'party' to the communication."); *see also Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1113 n. 5 (S.D. Cal. 2024) ("a party to a communication cannot 'wiretap' or 'eavesdrop' on its own communications."). Because LinkedIn was indisputably a party to the communications alleged here (*i.e.*, Plaintiffs' interactions with LinkedIn's website), any discernable direct Section 631 claim must be dismissed with prejudice.

**2.      Plaintiffs' derivative Section 631 claim should be dismissed because they fail to plead a predicate violation by Meta or Adobe and fail to plead any facts regarding LinkedIn's knowledge or intent.**

Because they cannot bring a direct claim against LinkedIn, Plaintiffs allege that LinkedIn "aided, and agreed and conspired with Meta and Adobe" to engage in some unspecified "proscribed conduct under § 631(a) of the CIPA" by "integrating and embedding the Meta Pixel and Adobe Audience Manager into the Website." Compl. ¶ 87. In addition to their failure to plead lack of consent, Plaintiffs' derivative claim fails for at least two additional independent reasons. First, to state a derivative claim under the fourth clause of Section 631(a), Plaintiffs "must allege [that Meta or Adobe] has violated one of the first three clauses of section 631(a), and that [LinkedIn] aided, agreed with, employed, or conspired with [Meta or Adobe] to commit those unlawful acts." *Rodriguez*, 722 F. Supp. 3d at 1113–14; *Gutierrez v. Converse Inc.*, 2025 WL 1895315, at *1 (9th Cir. July 9, 2025) (derivative claim failed where plaintiff failed to establish predicate violation). As a starting matter, it is unclear which provision of Section 631(a) Plaintiffs allege that Meta and Adobe violated. Regardless, for numerous independent reasons described below, Plaintiffs fail to state a claim that Meta or Adobe violated any provision at all. Second, Plaintiffs' derivative claim against LinkedIn fails because the Complaint is entirely devoid of facts regarding LinkedIn's requisite knowledge or intent.

**a.      Plaintiffs cannot allege a predicate violation of Clause One of Section 631(a) because it does not apply to Internet communications.**

Some of Plaintiffs' allegations could be read as an attempt to state a claim under Clause One of Section 631(a) for illegal wiretapping. *See* Compl. ¶¶ 94, 106. To the extent Plaintiffs attempt to do so, their claim fails as a matter of law because "Clause one of Section 631(a) prohibits telephonic wiretapping, which does not apply to the internet" or internet transmissions like those on LinkedIn's website. *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 999 (N.D. Cal. 2024); *Rodriguez*, 722 F. Supp. 3d at 1116 (dismissing Clause One claim against website operator because it does not apply).

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

                    **b.**        **Plaintiffs fail to state a claim under Clause Two because they do not plead facts that Meta or Adobe "reads or attempts to read" the contents of their communications while "in transit."**

To the extent Plaintiffs attempt to assert a claim premised on Meta and Adobe's alleged violation of Clause Two, this claim also fails for at least three independent reasons: (1) Plaintiffs have not stated facts alleging that Meta and Adobe "read[], or attmpt[ed] to read[]" the contents of a communication; (2) even if they did, Plaintiffs fail to allege that Meta and Adobe did so while the communication was "in transit"; and (3) Plaintiffs fail to allege that Meta or Adobe read any of *Plaintiffs'* communications at all. *See* Cal. Pen. Code § 631(a).

*Read or attempted to read.* The Complaint contains no allegations that Meta or Adobe read or attempted to read any alleged communications. "[L]iability under prong two of section 631 requires some effort at understanding the substantive meaning of the message, report or communication," which is absent here. *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025), quoting *Williams v. DDR Media, LLC*, 2024 WL 4859078, at *5 (N.D. Cal. Nov. 20, 2024); *see also Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025) ("[Y]ou must do something more than just intercept the communication while it is in transit to be held liable."). Plaintiffs allege only that Meta can "track[] the people and type of actions they take," "intercept[] each page a user visits" and then "store[] this data on its own servers, in some instances, for years on end." Compl. ¶¶ 19-20. But threadbare allegations that Meta intercepts and stores data do not satisfy the statute's requirement that a perpetrator actually read or make "some effort at understanding the substantive meaning" of an intercepted communication. *Torres*, 2025 WL 1135088, at *5. Plaintiffs' allegations that "when the Adobe Audience Manager is integrated with the Meta Pixel, the URL headers of webpages visited by website users are: (a) routed from the website to Adobe and then to Facebook; and (b) visible to both Adobe and Meta" are similarly defective. Compl. ¶ 33. Plaintiffs' allegation that their information may have been merely "visible" to Adobe and Meta is insufficient to state that either Meta or Adobe read or attempted to read any alleged communications within the meaning of Clause Two.

*While in transit.* Even if Plaintiffs have alleged that Meta or Adobe read or attempted to

read any of their communications, the claim still fails because Plaintiffs do not allege any facts showing that Meta or Adobe did so "*while* the [alleged communication] is in transit" rather than once the alleged communication was placed in electronic storage. *Cody*, 718 F. Supp. 3d at 998 (emphasis in original) quoting Cal. Pen. Code § 631(a); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876-77 (9th Cir. 2002); *J.S. v. Spring Fertility Holdings, LLC*, 2026 WL 1483490, at *5 (N.D. Cal. May 27, 2026) (plaintiffs "must allege that [third party] read their communications during their transmission, as opposed to once the communications were placed in electronic storage.").

In *Cody*, for instance, the court found that plaintiff failed to satisfy the "in transit" requirement of Section 631 where the plaintiff alleged that the defendant allowed a third-party software installed on its website to intercept and route communications to third parties "in real time . . . as they occur" because such "conclusory allegations restating the pleading requirement of real-time interception fail to provide specific factual allegations." *Cody*, 718 F. Supp. 3d at 1001; *see also Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting [plaintiff's] data in transit"). As the *Cody* court explained, absent facts that "explain how the software works or how the interception occurs," the Complaint failed to state a Section 631 claim. 718 F. Supp. 3d at 1001, citing *Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (claim dismissed for failure to "allege with particularity how or when any defendant became aware of his communications").

So too here. Plaintiffs plead only that the Pixel "re-directs the content of the user's communications to Meta while the exchange of the communication between the user and website provider is still occurring" and that Meta "stores this data on its own servers, in some instances, for years on end." Compl. at ¶¶ 19–20. These facts fail to allege wiretapping or eavesdropping because they fail to allege the *reading* of any communications *while they're in transit*. Courts routinely find that the receipt and storage of information does not violate Section 631(a), even if the party receiving that data has the capability of reading it while in transit or at a later date. *Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *6 (N.D. Cal. Apr. 21, 2026) (allegations that

15

6243480

defendant "intercepted Plaintiff['s] private video-viewing data in real time" and "*processes* and stores this data on its own systems—which it uses to create audiences, panels, and otherwise service advertising needs" are "conclusory allegations [that] do not support any inference as to how the content is simultaneously read." (emphasis in original)); *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023) ("'While' is the key word here. Plaintiff alleges Defendant's code 'allows the [third party] to secretly intercept in real time, eavesdrop upon and store transcripts of Defendant's chat communications.' But how? That statement does little more than restate the pleading requirement of real time interception." (cleaned up)); *Torres*, 2025 WL 1135088, at *5 (in-transit requirement not satisfied even when a third party intercepted and stored communications because the third party didn't read or attempt to read the communications while they were in transit).

*No interception of **Plaintiffs'** communications.* But even if "plaintiffs' allegations are likely sufficient to establish that the technology at issue enabled some 'communications' to be intercepted" within the meaning of Section 631, their claim still fails because, as shown above in Section III. A., "plaintiffs do not specifically allege that *their* communications were intercepted." *D'Antonio*, 820 F. Supp. 3d at 936 (emphasis in original); *see also Wiley, Inc.*, 2025 WL 3654085, at *7 (same); *Shah*, 2026 WL 216334, at *7 (same). "In the absence of any allegation that plaintiffs themselves interacted with the website in a manner that involved communications whose contents could have been intercepted, they fail to plead the elements of a valid wiretapping claim." *D'Antonio*, 820 F. Supp. 3d at 936; *Wiley*, 2025 WL 3654085, at *7 (same); *Shah*, 2026 WL 216334, at *7 (same).

### c.    Plaintiffs fail to state a claim under Clause Three because such a claim depends on a violation of Clauses One or Two.

To the extent Plaintiffs attempt to assert a derivative "use" claim under the Clause Three, it too fails because finding a violation of Clause Three of Section 631(a) is contingent upon a finding of a violation of either Clause One or two. *See Martin v. Sephora USA, Inc.*, Case No. 1:22-cv-01355-JLT-SAB, 2023 WL 2717636, at *11 (E.D. Cal. Mar. 30, 2023) ("A finding of a violation under the third clause of § 631(a) is contingent on a finding of a violation of the first or

second clause of § 631(a)."); *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained through a violation of the first or second clauses [of § 631(a)]. Because Plaintiffs have not done so, they have also failed to plead a violation of the third clause.").

Plaintiffs' derivative Section 631 claim can only be sustained if they adequately pleaded a predicate violation by Meta or Adobe. Because they have failed to do so, this claim should be dismissed.

> **3.    Plaintiffs' Section 631 claim also fails because they have not and cannot allege that LinkedIn had the requisite knowledge or intent.**

Plaintiffs' derivative Section 631 claim fails for the additional independent reason that the Complaint is entirely devoid of facts plausibly alleging that LinkedIn knowingly and intentionally helped Meta and Adobe willfully violate CIPA. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) ("CIPA liability only extends to willful or intentional conduct."). Because CIPA is a criminal statute, the *mens rea* requirement must be satisfied as to each element. *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009). In the context of third-party software cases like this one, even actual "awareness that [unauthorized] information is likely being transmitted" does not satisfy the *mens rea* requirement and "is not the right way to think about intent." *Doe I*, 741 F. Supp. 3d at 840. To have the requisite intent to violate Clause Four, "the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute. At the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942–43 (N.D. Cal. 2024); *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *17 (N.D. Cal. Oct. 16, 2025) (same).

Plaintiffs have not pleaded, and cannot plead, that LinkedIn willfully or intentionally aided Meta and Adobe in order to have Meta and Adobe violate CIPA. To start, Plaintiffs provide only the lone vague and conclusory allegation that LinkedIn "aided, and agreed and conspired with Meta and Adobe to permit and cause to be done proscribed conduct under § 631(a) of the CIPA, as alleged herein, including but not limited to integrating and embedding the Meta Pixel

17

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

and Adobe Audience Manager into the Website." Compl. ¶ 87. But LinkedIn "embedding" Meta and Adobe's routinely-used commercial software tools on its website does not demonstrate that LinkedIn intended to help these parties violate CIPA. *See, e.g., YETI Coolers*, 754 F. Supp. 3d at 943 (dismissing derivative claim where complaint alleged that defendant provided third-parties access to plaintiffs' communications but did "not contain sufficient facts for the Court to draw a plausible inference that Defendant knowingly agreed with or employed [third party] to engage in conduct that violated the wiretapping statute."); *Rodriguez*, 722 F. Supp. 3d at 1123–24 (dismissing derivative claim where complaint alleged that defendant provided third parties access to plaintiff's communications but "Plaintiff has not alleged that Defendants knew [third party]'s conduct constituted a breach of some duty."). Moreover, as discussed above *supra* Section III. B. , LinkedIn disclosed to its users that third-party service providers may collect information about the alleged communications complained about here, *i.e.*, the web pages they visited on LinkedIn. Given those disclosures, Plaintiffs have not and cannot plead facts plausibly showing both that LinkedIn knew that any alleged data collection by Meta and Adobe occurred without users' consent, as the statute requires, and that LinkedIn acted with the purpose of aiding Meta and Adobe to do so. Nothing in this Complaint plausibly alleges that LinkedIn knowingly and intentionally helped Meta or Adobe eavesdrop on any alleged communications in an effort to violate CIPA. The Section 631 claim should therefore be dismissed.

      **D.**      **Plaintiffs' CIPA § 632 claim should be dismissed because the statute does not provide for derivative liability and, even if it did, Plaintiffs fail to plead the requisite statutory elements.**

Plaintiffs CIPA § 632 claim fails for at least three independent reasons.

      **1.**      **CIPA § 632 does not provide for derivative liability.**

Plaintiffs allege that "Meta and Adobe eavesdropped and/or recorded confidential communications through an electronic amplifying or recording device" and that LinkedIn "is liable for aiding and abetting violations of Section 632 by Meta and Adobe." Compl. at ¶¶ 101, 104. But while Section 631 contains an aiding and abetting provision, "the text of Penal Code § 632 does not expressly provide for derivative liability." *YETI Coolers*, 754 F. Supp. 3d at 944; *J.S.*, 2026 WL 1483490, at *6 ("The plain language of § 631 allows for derivative liability, and

18

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

the language of § 632 does not."). Moreover, reading derivative language into Section 632 would render the derivative language actually included in 631 surplusage, thereby violating the rules of statutory construction. *See In re Eastport Assocs.*, 935 F.2d 1071, 1080 (9th Cir. 1991) ("[S]tatutes should be construed to give their terms meaning and effect, avoiding 'interpretive constructions which render some words surplusage.'") (quoting *California Mfrs. Ass'n v. Public Utils. Comm'n*, 24 Cal. 3d 836, 844 (1979)).

### 2. Even if it did, Plaintiffs do not allege facts that LinkedIn had the requisite knowledge and intent.

Even assuming, however, that Section 632 permitted Plaintiffs to bring a derivative claim against LinkedIn, the claim still fails because Plaintiffs do not allege facts that LinkedIn had the requisite knowledge and intent to aid and abet Meta and Adobe in violating Section 632 for the same reasons Plaintiffs fail to plead LinkedIn had the knowledge and intent required for their derivative Section 631 claim. *See, e.g., YETI Coolers*, 754 F. Supp. 3d at 942 (to have the requisite intent, "the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute.").

### 3. Plaintiffs fail to plead that their alleged communications were confidential.

Section 632 proscribes the use of an electronic amplifying or recording device to eavesdrop upon or record a confidential communication. Cal. Pen. Code § 632. CIPA defines a "confidential communication" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made . . . in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." *Id.* § 632(c). A communication is confidential only if a party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1073 (N.D. Cal. 2021), quoting *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776–77 (2002).

As discussed above *supra* Section III. B., LinkedIn and Meta's disclosures eliminate any

19

objectively reasonable expectation that Plaintiffs' website interactions on LinkedIn could not be shared with LinkedIn's third-party service providers. Moreover, California courts "have developed a presumption that Internet communications do not reasonably give rise to an expectation of confidentiality, and plaintiffs must show that there is something unique about these particular internet communications which justify departing from the presumption." *Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024), quoting *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 799 (N.D. Cal. 2022); *see also Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) ("California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of section 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." (collecting cases)); *but see Smith v. Google, LLC*, 735 F. Supp. 3d 1188, 1199 (N.D. Cal. 2024) (California courts have not recognized a legal presumption that internet communications are not confidential). Plaintiffs have not pleaded any facts that would justify departing from this presumption.  Their claim should be dismissed with prejudice.

**E.    Plaintiffs' CIPA § 638.51(a) claim fails because Section 638.51 does not apply to the technologies alleged here and, even if it did, Plaintiffs fail to allege that any of their communications were recorded.**

Plaintiffs' Section 638.51 claim fails because it expressly contradicts the plain language of the definition of a pen register included in the statute. Section 638.50(b) defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, *but not the contents of a communication*." Cal. Penal Code § 638.50(b). But Plaintiffs allege that the exact same transmission through the exact same technologies violates both Section 638.50(b) and Sections 631 and 632 of CIPA (and ECPA), which cover the contents of a communication and not record information. *See* Compl. ¶ 117 (alleging as basis for pen register claim that "[u]nless and until enjoined and restrained by order of this Court . . . Defendant will continue to unlawfully tap and intercept *the contents* of LinkedIn Learning users' communications within LinkedIn Learning."); *see also id.* 99, 106, 117. Their pen register claim therefore fails. *See In re Apple Data Priv. Litig.*, 2026 WL 146025, at *4 (N.D.

20

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

Cal. Jan. 20, 2026) (dismissing Section 638.51(a) claim where plaintiffs simultaneously asserted a Section 632 because "[c]ollection of the same communications thus cannot simultaneously violate both provisions."); *People v. Drennan*, 84 Cal. App. 4th 1349, 1356 (2000) (Section 632 prohibits eavesdropping on or recording the substance of "confidential communication[s]," which excludes "non-content-based conduct coincident to the communication.").

LinkedIn recognizes this Court's decision in *In re Meta Pixel Tax Filing Cases*, finding that a device may still be a pen register even if it collects the contents of communications. 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025). LinkedIn respectfully contends, however, that such an interpretation renders the "but not the contents of a communication" portion of the statute surplusage, contrary to the rules of statutory interpretation. *See In re Eastport Assocs.*, 935 F.2d at 1080 ("[S]tatutes should be construed to give their terms meaning and effect, avoiding 'interpretive constructions which render some words surplusage.'" (quoting *California Mfrs. Ass'n*, 24 Cal.3d at 844)). Moreover, if, as this Court holds, "the relevant statutory language is ambiguous," *Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1153, then the rule of lenity ought to apply to its interpretation because CIPA is a criminal statute and because "[c]ourts are also supposed to narrowly construe civil statutes that impose punitive civil penalties," *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1112 (N.D. Cal. 2025) (rule of lenity applies to interpreting CIPA); *People v. Nuckles*, 56 Cal. 4th 601, 611 (2013) ("ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation."). Further, the allegations in *In re Meta Pixel Tax Filing Cases* are distinguishable from those here because in the *Meta Pixel Tax Filing Cases* plaintiffs alleged that "the various functionalities within the Meta Pixel operate independently from one another," so "the process that records metadata in a pen register-like manner is a separate 'device' or 'process' from the one that collects the contents of users' communications." *Id.* at 1155. The Complaint here contains no such allegations.

But even if Plaintiffs' allegations that LinkedIn "intercept *the contents* of LinkedIn Learning users' communications" somehow do not doom their pen register claim as a matter of law, their claim still fails because the Complaint does not include allegations that any of *their*

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

alleged communications were intercepted, for the reasons detailed above *supra* Section III. A. *See Wiley v. Universal Music Grp., Inc.*, 2025 WL 3654085, at *9 (N.D. Cal. Dec. 17, 2025) (dismissing pen register claim because plaintiffs "have not alleged that *they* ever communicated with the website," and that "[i]n the absence of any allegation that they communicated with the websites, they cannot allege that the "dialing, routing, addressing, or signaling information" relating to any such communication was unlawfully tracked." (emphasis in original)); *D'Antonio*, 820 F. Supp. 3d at 937 (same); Shah, 2026 WL 216334, at *8 (same).

### F. Plaintiffs' ECPA claim fails as a matter of law because it is a one-party consent statute.

Unlike CIPA or the VPPA, the ECPA is a one-party consent statute. *Pyankovska v. Abid*, 65 F.4th 1067, 1074 (9th Cir. 2023). There is no liability under the ECPA "where such person is a party to the communication or where one of the parties to the communication has given prior consent" to the interception. 18 U.S.C. § 2511(2)(d). Plaintiffs squarely allege that LinkedIn "embed[ed] the Meta Pixel and Adobe Audience Manager." Compl. ¶ 76. By Plaintiffs' own allegations, LinkedIn is a party to Plaintiffs' alleged communications, and LinkedIn necessarily consented to the alleged interception. Plaintiffs' ECPA claim should be dismissed with prejudice. 18 U.S.C. § 2511(2)(d); *see also Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) (ECPA claim "barred pursuant to the one-party consent provision" when defendant, "as the creator and operator of its website, consented to the use of data collection tools it installed on its website.").

Plaintiffs also fail to adequately plead the other elements of an ECPA claim for the same reasons that require dismissal of Plaintiffs' CIPA claims. *See Konop*, 302 F.3d at 878 (ECPA requires interception to occur during transmission); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d at 816 (ECPA claim fails because plaintiffs' "allegations do not suffice to show that Plaintiffs' own oral communications were intercepted, which they must do."); *id.* at 819 (fails to plead that defendants illegally disclosed communication because "liability for disclosure or use is contingent on the original interception being unlawful."); *id.* (to violate use or disclosure prong of the ECPA, Plaintiffs must allege that "Defendants knew each recording was the product of an

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480

unauthorized interception at the time of their alleged use and disclosure.").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed for failure to state a claim.  Because several of the defects in Plaintiff's complaint are incurable even under the forgiving standard for leave to amend, dismissal should be with prejudice.


Dated:  July 1, 2026                                      KEKER, VAN NEST & PETERS LLP


                                       By:    /s/ *Matan Shacham*
                                              BENJAMIN BERKOWITZ
                                              MATAN SHACHAM
                                              CHRISTINA LEE
                                              SPENCER MCMANUS
                                              ROBYN PARISER

                                              Attorneys for Defendant LINKEDIN
                                              CORPORATION

DEFENDANT LINKEDIN CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS;
MEMORANDUM OF POINTS AND AUTHORITIES
Case No. 5:26-cv-03460-PCP

6243480