**DRURY LEGAL, LLC**
Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-Mail: scott@drurylegal.com

**ARISOHN LLC**
Joshua D. Arisohn (admitted *pro hac vice*)
94 Blakeslee Rd.
Litchfield, CT 06759
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

**KINGFISHER LAW APC**
Nithin Kumar
800 W 1st St., #1803
Los Angeles, CA 90012
Telephone: (408) 930-3580
Email: nithin@kingfisherlawapc.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARISSA MELUNSKY, DANA CUTOLO, KATE SHIMSHOCK, MAUREEN CAREY, CAN OZDORUK and SHUBHRANSHU GUPTA, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:26-cv-03460-PCP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS**<br><br>Date:    September 24, 2026<br>Time:    10:00 a.m.<br>Dept.:    Courtroom 8, 4th Floor<br>Judge:    Hon. P. Casey Pitts |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND ................................................................................................2

LEGAL STANDARD ...........................................................................................................4

    I.    Plaintiffs Adequately State a Claim Under the VPPA. ...............................5

    II.    Defendant Does Not Establish Consent. ....................................................7

        A.    Defendant Improperly Relies on Extrinsic Evidence. ...................7

        B.    Defendant Cannot Satisfy Its Burden of Establishing Consent......7

        C.    Defendant Cannot Show Plaintiffs Consented to the Conduct at Issue. ..............................................................................................9

    III.    Plaintiffs Adequately State a Claim Under CIPA § 631. .........................11

        A.    Plaintiffs Adequately Allege Meta and Adobe Read or Attempted to Read or Learn the Contents of Plaintiffs' Intercepted Communications While in Transit.............................12

        B.    Plaintiffs Adequately Allege Defendant Used and Attempted to Use the Unlawfully-Intercepted Communications. .................15

        C.    Plaintiffs' Adequately Allege Defendant Had the Requisite Intent to Aid Meta and Adobe's Interceptions. ...........................16

    IV.    Plaintiffs Adequately State a Claim Under CIPA § 632. .........................19

    V.    Plaintiffs Adequately State a Claim Under CIPA § 638.51(a). ...............20

    VI.    Defendant's Consent Defense to Plaintiffs' ECPA Claim Lacks Merit. ........................................................................................................22

        A.    Defendant Unlawfully Procured Meta and Adobe to Intercept the Communications at Issue.......................................................22

        B.    The Crime-Tort Exception to the ECPA's One-Party Consent Exemption Applies. ...................................................................24

CONCLUSION ...................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)...................................................................... 25

*Anderson v. Nat'l Collegiate Athletic Ass'n*,
2026 WL 925519 (C.D. Cal. Mar. 25, 2026) .................................................................... 21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ 4

*Barnhart v. Sigmon Coal, Co.*,
534 U.S. 438 (2002) .......................................................................................................... 24

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................ 5

*Berman v. Freedom Fin'l Network*,
30 F.4th 849 (9th Cir. 2022) ............................................................................................... 9

*Boseovski v. McCloud Healthcare Clinic, Inc.*,
2020 WL 68578 (E.D. Cal. Jan. 7, 2020) ........................................................................ 23

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021)............................................................................ 10

*Brown v. Google LLC,*
685 F.Supp.3d 909 (N.D. Cal. 2023)................................................................................ 20

*Cal. Pac. Bank v. Fed. Deposit Ins. Corp.*,
885 F.3d 560 (9th Cir. 2018) ............................................................................................ 22

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021).............................................................................. 10

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) ........................................................................................... 7

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014)........................................................................... 10, 14

*Castillo v. Costco Wholesale Corp.*,
2024 WL 4785136 (W.D. Wash. Nov. 14, 2024)............................................................. 25

*Cole v. LinkedIn Corp.*,
807 F. Supp. 3d 959 (N.D. Cal. 2025)....................................................................... 1, 6, 20

*Cousin v. Sharp Healthcare,*
   681 F. Supp. 3d 1117 (S.D. Cal. 2023) ................................................................................ 16

*D'Angelo v. Penny OpCo, LLC,*
   2023 WL 7006793 (S.D. Cal. Oct. 24, 2023)................................................................. 12, 13

*Dawson v. Univ. of Phoenix,*
   2026 WL 92248 (N.D. Ill. Jan. 13, 2026)................................................................. 23, 24, 25

*de Ayora v. Inspire Brands, Inc.,*
   2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) ........................................................................ 21

*Drummer v. Costar Grp., Inc.,*
   2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) ........................................................................ 21

*Eichenberger v. ESPN, Inc.,*
   876 F.3d 979 (9th Cir. 2017) ............................................................................................ 5, 20

*Ellsworth v. U.S. Bank, N.A.,*
   908 F. Supp. 2d 1063 (N.D. Cal. 2012)................................................................................... 8

*Gabrielli v. Haleon US Inc.,*
   815 F. Supp. 3d 852 (N.D. Cal. 2025).................................................................................... 21

*Ghazizadeh v. Coursera, Inc.,*
   737 F. Supp. 3d 911 (N.D. Cal. 2024).................................................................................... 9

*Gianne v. Accor Mgmt. US Inc.,*
   2026 WL 925522 (C.D. Cal. Mar. 31, 2026) ......................................................................... 19

*Gliksman v. Healthline Media, LLC,*
   2026 WL 1908082 (N.D. Cal. July 2, 2026) .......................................................................... 21

*In re BetterHelp, Inc. Data Disclosure Cases,*
   2024 WL 3416511 (N.D. Cal. July 15, 2024) ........................................................................ 25

*In re Capacitors Antitrust Litig.,*
   2017 WL 897340 (N.D. Cal. Mar. 7, 2017) ............................................................................ 9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.,*
   402 F. Supp. 3d 767 (N.D. Cal. 2019)..................................................................................... 8

*In re Google Inc.,*
   2013 WL 5423918 (N.D. Cal. Sept. 26, 2013)....................................................................... 10

*In re Meta Pixel Healthcare Litig.,*
   647 F. Supp. 3d 778 (N.D. Cal. 2022).................................................................................... 10

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 987 (N.D. Cal. 2024).................................................................................. 9, 20, 21

*In re Tracht Gut, LLC*,
836 F.3d 1146 (9th Cir. 2016) ..................................................................................................... 5

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014)......................................................................................... 14

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) ...................................................................................................... 8

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)................................................................................... 18, 19

*Kristensen v. Credit One Bank, N.A.*,
2016 WL 11757832 (C.D. Cal. July 11, 2016) ........................................................................... 19

*Lee v. Plex, Inc.*,
773 F. Supp. 3d 755 (N.D. Cal. 2025)......................................................................................... 6

*Lonegan v. Hasty*,
436 F. Supp. 2d 419 (E.D.N.Y. 2006) ....................................................................................... 23

*Lopez v. Apple, Inc.*,
519 F. Supp. 3d 672 (N.D. Cal. 2021)......................................................................................... 19

*Lynch v. Express Scripts Holding Co.*,
2026 WL 1749550 (N.D. Cal. June 17, 2026)...................................................................... 16, 19, 25

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) ......................................................................... 12, 14

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) ..................................................................................................... 5

*Nguyen v. Stephens Inst.*,
529 F. Supp. 3d 1047 (N.D. Cal. 2021)......................................................................................... 8

*Peavy v. WFAA-TV, Inc.*,
221 F.3d 158 (5th Cir. 2000) ..................................................................................................... 23

*Q.J. v. PowerSchool Holdings LLC*,
2025 WL 2410472 (N.D. Ill. Aug. 20, 2025) ........................................................................ 23, 25

*R.C. v. Sussex Publishers, LLC*,
2025 WL 1755994 (N.D. Cal. June 23, 2025)............................................................................. 12

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024)................................................................................... 25

*R.S. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025).......................................................................... 24

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025)............................................................................ 14, 24

*Risher v. Adecco Inc.*,
2020 WL 13505422 (N.D. Cal. Feb. 14, 2020)........................................................................ 7

*Roney v. Miller*,
705 F. App'x 670 (9th Cir. 2017)........................................................................................... 25

*Rowe v. Educ. Credit Mgmt. Corp.*,
559 F.3d 1028 (9th Cir. 2009) ................................................................................................. 5

*Rusow v. Skinspirit Essential LLC*,
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) ...................................................................... 19

*Ryabyshchuk v. Citibank (S. Dakota) N.A.*,
2011 WL 5976239 (S.D. Cal. Nov. 28, 2011)..................................................................... 7, 8

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025)..................................................................... 18, 19

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)................................................................................... 19

*St. Aubin v. Carbon Health Tech., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ................................................................. *passim*

*Sussman v. Am. Broad. Companies, Inc.*,
186 F.3d 1200 (9th Cir. 1999) ............................................................................................... 24

*U.S. ex rel. Air Control Technologies, Inc. v. Pre Con Industries, Inc.*,
720 F.3d 1174 (9th Cir. 2013) ................................................................................................. 8

*Valentine v. Wideopen West Finance, LLC*,
288 F.R.D. 407 (N.D. Ill. 2012) ............................................................................................ 23

*Vera v. O'Keefe*,
791 F. Supp. 2d 959 (S.D. Cal. 2011) ................................................................................... 19

*Wiley v. Universal Music Grp., Inc.*,
826 F. Supp. 3d 1121 (N.D. Cal. 2025)................................................................................. 21

*Yoon v. Meta Platforms, Inc.*,
    2024 WL 5264041 (N.D. Cal. Dec. 30, 2024) .......................................................................... 20

**Statutes**

18 U.S.C. § 2511 ................................................................................................................. 22, 23, 24

18 U.S.C. § 2520 ..........................................................................................................................23

18 U.S.C. § 2710 ............................................................................................................................ 5

Cal. Penal Code § 631(a)................................................................................................... 11, 12, 16

**Rules**

Cal. R. Prof. Conduct 33 ............................................................................................................... 19

**INTRODUCTION**

Plaintiffs Clarissa Melunsky, Dana Cutolo, Kate Shimshock, Maureen Carey, Can Ozdoruk and Shubhranshu Gupta (collectively, "Plaintiffs") allege Defendant LinkedIn Corporation ("Defendant") unlawfully integrated and installed the tracking code of multiple third parties, including the Meta Pixel and Adobe Audience Manager, into the website for its online learning platform LinkedIn Learning (linkedin.com/learning) (the "Website"). Plaintiffs allege that, through those integrations, Defendant violated the: (a) Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), (b) Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510, *et seq.*; and (c) multiple sections of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code § 630, *et seq.* Specifically, Plaintiffs allege that, as a result of the integrations of the tracking code into the Website, Plaintiffs' and class members' personally identifiable information ("PII") and video-watching information was disclosed to and intercepted by the third-party tracking code vendors, including Meta Platforms, Inc. ("Meta") and Adobe Inc. ("Adobe").

Defendant has no compelling defense to Plaintiffs' claims. Indeed, this Court previously denied Defendant's motion to dismiss a complaint in a similar action that was based on the same underlying conduct. *See Cole v. LinkedIn Corp.*, 807 F. Supp. 3d 959 (N.D. Cal. 2025). The Court should reach the same result here.

While Defendant contends Plaintiffs fail to allege that Defendant disclosed their PII in violation of the VPPA, the contention improperly ignores Plaintiffs' allegations and the reasonable inferences therefrom. In actuality, Plaintiffs adequately allege the disclosure of their PII.

Defendant's sundry arguments as to Plaintiffs' CIPA claims are similarly deficient. While Defendant argues Plaintiffs consented to the alleged unlawful conduct, Defendant premises the argument on improper extrinsic evidence. Even if the evidence were proper, it does not establish Plaintiffs' consent.

With respect to Plaintiffs' CIPA § 631(a) claim, Defendant incorrectly argues that Plaintiffs have not adequately alleged that: (a) Meta and Adobe read or attempted to read or learn the contents of the communications at issue while in transit; (b) Defendant used or attempted to use the unlawfully-intercepted communications; or (c) Defendant did not aid and agree and conspire with

Meta and Adobe in connection with their unlawful interceptions of the communications at issue. Defendant reaches a different conclusion by ignoring Plaintiffs' allegations and the standards applicable to a Rule 12(b)(6) motion.

Defendant's challenge to Plaintiffs' CIPA § 632 claim likewise fails. Contrary to Defendant's contention, Plaintiffs may hold Defendant accountable for aiding and abetting Meta and Adobe's violations of § 632. Moreover, Plaintiffs adequately allege Defendant acted with the requisite knowledge and intent and that their communications were confidential.

Contrary to Defendant's contention, CIPA § 638.51 applies to the tracking technologies at issue here. Moreover, Plaintiffs adequately allege that the relevant communications were recorded.

Finally, Defendant's one-party consent defense to Plaintiffs' ECPA claim ignores that Plaintiffs seek to hold Defendant liable based on a procurement theory of liability. The one-party consent exemption to ECPA liability does not apply to Defendant's procurement. Further, based on the crime-tort exception to the one-party consent exemption, Defendant's consent theory fails.

## FACTUAL BACKGROUND

### LinkedIn Learning

Defendant owns and operates the LinkedIn Learning platform (linkedin.com/learning). Compl. (ECF No. 1) ¶¶ 1, 10. "LinkedIn Learning is an online learning platform with over 27 million users." *Id.* ¶ 35. "It offers video courses designed to help people develop skills in business, technology, and creativity." *Id.* "LinkedIn Learning offers 24,300 courses from over 3,900 industry experts and thought leaders in over 20 languages." *Id.* "To use LinkedIn Learning, LinkedIn users must subscribe to LinkedIn Premium for a cost of $39.99/month." *Id.* ¶ 36; *see also id.* ¶¶ 4-9. "Alternatively, businesses can purchase LinkedIn Learning subscriptions for their employees at a cost of several hundred dollars per year." *Id.* ¶ 36.

### Defendant's Integration and Installation of Third-Party Tracking Code

Defendant integrated and installed on the Website tracking code offered by Meta and Adobe known as the Meta Pixel and Adobe Audience Manager, respectively. Compl. ¶¶ 2, 37. The Meta Pixel is "a piece of code that advertisers, like Defendant, can integrate into their website." *Id.*

¶ 19. "Once activated, the Meta Pixel 'tracks the people and type of actions they take.'" *Id.* Specifically, the Meta Pixel "intercepts each page a user visits, what videos they watch, what buttons they click, as well as specific information they input into the website and searched for. The Meta Pixel sends each of these pieces of information to Meta with other identifiable information, such as the user's IP address and device browser identifiers." *Id.* ¶ 20. Notably, through the use of cookies, Meta links the above-described information with a Facebook user's Facebook ID, which uniquely identifies the user's Facebook account. "Meta—or any ordinary person—can easily use the Facebook ID to quickly and easily locate, access, and view the User's corresponding Facebook profile." *Id.* ¶ 24.

"The Meta Pixel can be configured to integrate with tracking technology offered by Adobe that is known as the Adobe Audience Manager[.]" *Id.* ¶ 28. "Through Adobe Audience Manager, website operators can create 'Facebook Website Custom Audiences (WCA) pixels for the purpose of sending web-based Audience Manager audience segments to Facebook, for online ad targeting with improved transparency.'" *Id.* ¶ 30. As shown below, "when Adobe Audience Manager is integrated with the Meta Pixel, data flows from the website through Adobe Audience Manager to Facebook:"



*Id.* ¶ 31. When "the Adobe Audience Manager is integrated with the Meta Pixel, the URL headers of webpages visited by website users are: (a) routed from the website to Adobe and then to Meta; and (b) visible to both Adobe and Meta." *Id.* ¶ 33. Moreover, when deployed on a website, Adobe Audience Manager "tracks visitor's communications and metadata including their IP address, page URL, browser and device characteristics, unique identifiers . . . , and session timing information." *Id.* ¶ 34.

At relevant times, each of LinkedIn Learning's pages hosting video classes contained code for the Meta Pixel and Adobe Audience Manager. *Id.* ¶ 37. That tracking code "among other things transmitted URL data in the form of full-string, descriptive URLs that contained detailed information regarding the webpage and video being viewed by a user, PII and other information to both Meta and Adobe." *Id.* "The URLs disclosed to Meta and Adobe described, among other things, the contents of the videos to which they linked." *Id.* "The combination of descriptive URL data from the Meta Pixel and PII from the Meta cookies embedded on the Website permitted Meta and Adobe to see who watched what video." *Id.* ¶ 41. Through the use of the Meta Pixel and Adobe Audience Manager, Defendant disclosed "both the 'contents' of its users' communications with the Website (the pages and videos that they viewed) as well as the 'characteristics' of those communications (the users' IP addresses, their Facebook IDs, device identifiers, emails, and phone numbers." *Id.* ¶ 42.

***Plaintiffs' Subscriptions to LinkedIn Learning and Use of the Website***

Each Plaintiff has been a LinkedIn Premium subscriber for several years and had a Facebook account for more than 10 years. *See id.* ¶¶ 4-9. Through these subscriptions, each Plaintiff has had access to the LinkedIn Learning platform and has watched several prerecorded video courses. *Id.*

## LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 12(b)(6), a court may dismiss a complaint if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a

cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009). The court also must "draw all reasonable inferences in favor of the plaintiff." *In re Tracht Gut, LLC*, 836 F.3d 1146, 1150 (9th Cir. 2016).

## ARGUMENT

### I.    Plaintiffs Adequately State a Claim Under the VPPA.

Defendant argues that "Plaintiffs' VPPA claim should be dismissed because they fail to plausibly allege that LinkedIn disclosed their personally identifiable information." MTD at 14.[1] That is incorrect. As detailed above, Plaintiffs allege Defendant disclosed their video watching data along with their Facebook IDs, which is sufficient. In addition, Plaintiffs specifically allege that their PII was disclosed because Defendant's disclosures were systematic, and they are Facebook users who watched videos through LinkedIn Learning.

Under the VPPA, an entity is liable when it discloses PII. 18 U.S.C. § 2710(b)(1). As the Ninth Circuit has explained, PII under the VPPA is "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (internal quotations omitted). Here, Plaintiffs plausibly allege that Defendant disclosed their PII to Meta and Adobe. Specifically, Plaintiffs allege that, "[a]t relevant times, each of LinkedIn Learning's pages hosting video classes contained code for the Meta Pixel and Adobe Audience Manager which, among other things, transmitted URL data in the form of full-string, descriptive URLs that contained detailed information regarding the webpage and video being viewed by a user, PII and other information to both Meta and Adobe." Compl. ¶ 37. "The URLs disclosed to Meta and Adobe described, among other things, the contents

---

[1] Citations to page numbers of docketed entries are to the CM/ECF-stamped page numbers.

of the videos to which they linked." *Id.* The Website also contains various cookies from Meta, including the c_user cookie, which contains users' Facebook IDs and transmits them along with any other data collected. *Id.* ¶¶ 21-24, 39-41.

"Courts in this district have often found that plaintiffs state plausible VPPA claims where, as here, they allege that defendants disclose video information and users' Facebook IDs." *Cole*, 807 F. Supp. 3d at 967 (citing *Lee v. Plex, Inc.*, 773 F. Supp. 3d 755, 772-73 (N.D. Cal. 2025))." "The same conclusion follows here." *Id.*

Defendant argues that Plaintiffs' VPPA claim is nevertheless lacking because Plaintiffs do not include screenshots of their Facebook accounts, allege that they accessed their Facebook accounts using the same browser that they used to view LinkedIn Learning videos, or provide specific dates and times on which they watched LinkedIn Learning videos. MTD at 15. But Defendant does not cite to any authority supporting its position. Regardless, Plaintiffs allege that Defendant *systematically* disclosed its users' data to Meta and Adobe. *See, e.g.*, Compl. ¶ 37 ("*each* of LinkedIn Learning's pages hosting video classes contained code for the Meta Pixel and Adobe Audience Manager") (emphasis added); *id.* ¶ 40 ("When someone watched a video on the Website, the Meta Pixel transmitted PII from these Meta cookies to Meta along with their URL data, PII and other information."). In other words, Plaintiffs plausibly allege Defendant's tracking practices impacted all of its LinkedIn Learning users, including Plaintiffs themselves.

Plaintiffs also allege facts supporting that they were individually impacted. They each allege that they have: (a) long had Facebook accounts; (b) been users of LinkedIn Learning for years; and (c) watched several videos through that platform. *Id.* ¶¶ 4-9. And they allege that Defendant disclosed their data specifically. *Id.* ¶ 58 ("Defendant disclosed to third parties Meta and Adobe the PII of Plaintiffs . . . ."); *id.* ("Defendant utilized the Meta Pixel and Adobe Audience Manager to compel the web browsers of Plaintiffs . . . to transfer their identifying information, including their Facebook IDs, along with their event data, including information about the videos they viewed to both Meta and Adobe."); *id.* ¶ 60 ("Defendant knowingly disclosed the PII and video viewing activity of Plaintiffs . . . .").  Accepting these allegations as true, Plaintiffs plausibly

allege that Defendant disclosed their PII to Meta and Adobe.

## II.    Defendant Does Not Establish Consent.

Through the improper use of extrinsic evidence, Defendant contends Plaintiffs consented to the unlawful wiretapping at issue. MTD at 16-20. Specifically, Defendant contends Plaintiffs consented to the unlawful conduct via: (a) Defendant's November 3, 2025 User Agreement (which incorporates Defendant's November 3, 2025 Privacy Policy and June 3, 2022 Cookies Policy); (b) Defendant's February 23, 2026 California Consumer Privacy Act ("CCPA") Notice; and (c) Meta's January 1, 2025 Terms of Use, which Defendant claims incorporates Meta's Privacy and Cookies Polices. *Id.* at 18-19. The contention fails for multiple reasons.

### A.    Defendant Improperly Relies on Extrinsic Evidence.

As detailed in Plaintiff's Opposition to Defendant's Request for Judicial Notice, Defendant improperly requests that this Court take judicial notice or incorporate by reference the above-described extrinsic evidence. Because Plaintiffs did not incorporate the extrinsic evidence into their Complaint by reference, and because the extrinsic evidence is not properly subject to judicial notice, Defendant may not rely on the evidence. Absent the extrinsic evidence, Defendant's consent contention necessarily fails. *See St. Aubin v. Carbon Health Tech., Inc.*, 2024 WL 4369675, at *8 (N.D. Cal. Oct. 1, 2024) ("Because the Court has declined to take judicial notice of the documents on which this [consent] argument depends, the Court rejects the argument.").

### B.    Defendant Cannot Satisfy Its Burden of Establishing Consent.

Even if the extrinsic materials relied on by Defendant were properly before the Court, Defendant still could not meet its burden of establishing that Plaintiffs agreed to any of the terms to which they point, let alone the current updated versions of those terms. "[C]onsent is an affirmative defense for which defendant bears the burden of proof." *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (internal quotations and citation omitted). As such, it is not properly raised in a motion to dismiss. *Risher v. Adecco Inc.*, 2020 WL 13505422, at *3 (N.D. Cal. Feb. 14, 2020) ("[I]t is not incumbent on plaintiff to plead facts refuting any possible affirmative defense, and resolution of the scope of any consent must await development of the record."); *Ryabyshchuk v.*

---

*Citibank (S. Dakota) N.A.*, 2011 WL 5976239, at *5 (S.D. Cal. Nov. 28, 2011) ("[A] motion for summary judgment—rather than a motion to dismiss—is the proper place for the creditor to establish that the consumer's claim fails due to the presence of prior express consent."); *Nguyen v. Stephens Inst.*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021) ("An affirmative defense may not ordinarily be raised on a motion to dismiss.").

Instead, "an affirmative defense . . . must be raised at summary judgment . . . ." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 790 (N.D. Cal. 2019) (citing *U.S. ex rel. Air Control Technologies, Inc. v. Pre Con Industries, Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013)). "The only exception is when it is absolutely clear from the allegations in the complaint and judicially noticeable material that" the defense succeeds. *Id.*; *Ellsworth v. U.S. Bank, N.A.*, 908 F. Supp. 2d 1063, 1083 (N.D. Cal. 2012) ("An affirmative defense may be considered [on a motion to dismiss] if the defense is based on undisputed facts or if the basis for the argument appears on the face of the complaint and any materials the court takes judicial notice of.").

Here, Defendant does not establish its consent defense with undisputed facts. Plaintiffs expressly allege they "did not consent to the interception and/or disclosure of their sensitive and confidential electronic communications via the Website." Compl. ¶ 80; *see also id.* ¶ 89 ("Plaintiffs . . . did not consent to the unlawful conduct of Defendant").

In response, Defendant makes the conclusory assertion that, via Defendant's November 3, 2025 User Agreement, Plaintiffs agreed to Defendant's Privacy and Cookie Polices. *See* MTD at 18. Defendant similarly asserts in conclusory fashion that Plaintiffs agreed to Meta's January 1, 2025 Terms of Service and Defendant's February 23, 2026 CCPA Notice. *Id.* at 18-19. Fatally missing from Defendant's assertions is evidence that Plaintiffs assented to the various terms and policies or what those terms and policies stated throughout the course of Plaintiffs' multi-year use of LinkedIn Learning. *See id.* at 18-20.

"Mutual assent requires, at a minimum, that the party relying on the contractual provision establish that the other party had notice and gave some indication of assent to the contract." *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023). Here, Defendant provides no

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS                                          8
CASE NO. 5:26-CV-03460-PCP

evidence that Plaintiffs had notice of the terms and policies at issue or gave some indication of assent thereto. *See* MTD at 18-20. Rather, Defendant merely points to the terms themselves without ever showing that Plaintiffs agreed to them. *See id.* at 18. That feeble effort does not suffice. *Compare Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911, 922 (N.D. Cal. 2024) (considering evidence that plaintiff agreed to the terms through a sign-in screen to determine whether the defendant provided reasonably conspicuous notice of its terms and if the plaintiff unambiguously manifested assent); *see also Berman v. Freedom Fin'l Network*, 30 F.4th 849, 864 (9th Cir. 2022) (discussing what constitutes sufficient notice to allow for mutual assent for formation of internet contract). Missing from Defendant's motion is evidence of any notice it provided to Plaintiffs of the terms on which it now relies or that Plaintiffs agreed to those terms or any other versions of the terms. Significantly, Defendant would possess any such evidence as related to Defendant's terms. To the extent Defendant lacks evidence regarding Plaintiffs' assent to Meta's terms, it calls into question what investigation Defendant made before presenting the argument. Any attempt by Defendant to sandbag Plaintiffs by introducing the missing evidence in its reply would be improper. *See In re Capacitors Antitrust Litig.*, 2017 WL 897340, at *1 (N.D. Cal. Mar. 7, 2017) (raising new argument in reply is a classic form of sandbagging).

Moreover, even if Defendant could establish that Plaintiffs agreed to Defendant's 2025 User Agreement, Defendant's 2026 CCPA Notice or Meta's 2025 Terms of Service, those documents say nothing about any terms that were in place throughout the multiple years in which Plaintiffs used LinkedIn Learning. *See* Compl. ¶¶ 4-9. Defendant's failure to establish what terms were in place at relevant times and whether Plaintiffs agreed to them dooms its consent argument. *See In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1006 (N.D. Cal. 2024) (Pitts, J.) ("Meta has not established what terms were purportedly in effect during the relevant period, let alone that any of the plaintiffs ever agreed to those terms.")

**C.      Defendant Cannot Show Plaintiffs Consented to the Conduct at Issue.**

Even if Defendant could show Plaintiffs agreed to the various terms, the various policies do not establish they consented to the conduct at issue in this case. "Consent to an interception can be

explicit or implied, but any consent must be actual." *In re Google Inc.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013). "In order for consent to be actual, the disclosures must explicitly notify users of the practice at issue." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. 2021) (internal quotations omitted); *see also Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 847-48 (N.D. Cal. 2014) (for a finding of consent, the disclosures must have given users notice of the "specific practice" at issue); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 793-94 (N.D. Cal. 2022) (a reasonable user would not have understood from Meta's generalized notice that Meta was collecting protected health information.). Moreover, "consent is not an all-or-nothing proposition," *see Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 623 (N.D. Cal. 2021) (internal quotations omitted), and so "a reviewing court must inquire into the dimensions of the consent and then ascertain whether the interceptions exceeded those boundaries." *See Brown*, 525 F. Supp. 3d at 1067 (internal quotations omitted). "The disclosures must have only one plausible interpretation for a finding of consent." *Calhoun*, 526 F. Supp. 3d at 620.

Here, the sundry policies on which Defendant relies lack the requisite specificity. With respect to Defendant's policies, it merely points to language that vaguely describes that Defendant "log[s] usage data" and may track data, including "page visits" and "videos you watch," from the use of Defendant's services. MTD at 18. However, Defendant does not explain what it means to "log usage data" or track page visits and videos. Moreover, the case is not about the direct communications between Plaintiffs and Defendant. As such, the above-described provisions are red herrings.

Defendant also points out that: (a) the current privacy policy discloses that "third parties may place cookies on users' browsers and that third parties 'will have access to [users'] information'"; and (b) the current cookies policy describes that "[p]ixels can also enable us and third parties to place cookies on your browser" and explains how third parties can use the information collected. *Id.* at 18-19. Again, the vaguely-worded policies say nothing about third parties wiretapping Plaintiffs' communications. *See* ECF Nos. 19-3 (Privacy Policy) §§ 1.4 and 3.5; 19-4 (Cookies Policy). Defendant's reliance on the CCPA Notice and Meta's terms of service

is similarly flawed, as those documents again fail to disclose the real-time wiretapping at issue here. *See* ECF Nos. 19-6 (CCPA Notice) § 5 (describing information Defendant may disclose); 19-11 (Meta cookies policy).

Finally, Defendant's privacy and cookie policies say nothing about its use of pen registers to allow third parties to collect device information and IP addresses of LinkedIn Learning users while using that platform. *See* ECF Nos. 19-3 (Privacy Policy) § 1.4 (describing use of third parties to collect information "about your device where *you have not engaged with our Services*) (emphasis added); 19-4 (Cookies Policy) at 3 (same).

## III.    Plaintiffs Adequately State a Claim Under CIPA § 631.

Defendant contends it did not violate the provision of CIPA § 631(a) that prohibits a person from aiding, agreeing with, employing or conspiring with another person to "unlawfully do, or permit, or cause to be done" any of the other acts prohibited by § 631(a).[2] *See* Cal. Penal Code § 631(a); *see also* MTD at 22-25. Defendant further contends it did not violate CIPA § 631(a) because it did not have the requisite knowledge or intent. *Id.* at 25-26. The contentions fail.

CIPA § 631(a) establishes liability for:

> Any person who, by means of any machine, instrument, or contrivance, or in any other manner, **[1]** intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively, or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system, **[2]** or who willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; **[3]** or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained; **[4]** or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section . . . .

Cal. Penal Code § 631(a) (bracketed numbers and emphasis added). As set forth in § 631(a), to establish that a person is liable under Clause Four of § 631(a), it is necessary to establish a predicate violation of Clauses One, Two and/or Three, the commission of which was aided by the

---

[2] Defendant argues it did not directly violate § 631(a) because it is a party to the communications at issue. MTD at 20. Plaintiffs premise Defendant's § 631(a) liability on its conduct in aiding and agreeing and conspiring with Meta and Adobe for those entities to intercept the communications at issue. *See* Compl. ¶ 87.

person. *See id.*

### A. Plaintiffs Adequately Allege Meta and Adobe Read or Attempted to Read or Learn the Contents of Plaintiffs' Intercepted Communications While in Transit.

Defendant contends the "Complaint contains no allegations that Meta or Adobe read or attempted to read any alleged communications" and, therefore, Plaintiffs have failed to allege a violation of Clause Two of CIPA § 631(a). MTD at 22. Defendant further contends that Plaintiffs do not allege any facts showing that Meta or Adobe read or attempted to read the communications at issue while they were in transit. *Id.* at 22-23. Finally, rehashing one of its VPPA arguments, Defendant contends Plaintiffs do not allege that Meta and Adobe read or attempted to read or learn the contents of their own communications. *Id.* at 24. Defendant's contentions either ignore Plaintiffs' allegations and the reasonable inferences therefrom or otherwise fail to accept them as true and view them in the proper light. When Plaintiffs' allegations are properly considered, Defendant's contentions fail.

While CIPA § 631 does not define the term "read," courts have determined that for liability to attach under Clause Two, there must be some effort at understanding the meaning of the communication. *R.C. v. Sussex Publishers, LLC*, 2025 WL 1755994, at *4 (N.D. Cal. June 23, 2025). In the context of analyzing whether a defendant read or attempted to read the contents of communications, the court in *R.C.* found that "courts have regularly held use of software to eavesdrop into communications is a basis for § 631 claims." *Id.* at *5 (citing cases).

With respect to the "in transit" requirement, "[w]hile a plaintiff must do more than merely restate the pleading requirement of real time interception, the standard is not overly burdensome. For instance, allegations that communications are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Mata v. Zillow Grp.*, 2024 WL 5161955, at *6 (S.D. Cal. December 18, 2024) (cleaned up). "[A] pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant." *D'Angelo v. Penny OpCo, LLC*, 2023 WL 7006793, at *8 (S.D.

Cal. Oct. 24, 2023).

Here, Plaintiffs adequately allege that Defendant read or attempted to read or learn the content of Plaintiffs' communications while they were in transit. Plaintiffs allege:

> 19. The Meta Pixel is a piece of code that advertisers, like Defendant, can integrate into their website. Once activated, the Meta Pixel 'tracks people and the type of actions they take.' *As soon as a user takes any action on a webpage that includes the Meta Pixel, it re-directs the content of the user's communication to Meta while the exchange of the communication between the user and website provider is still occurring.*

> 28. The Meta Pixel can be configured to integrate with tracking technology offered by Adobe that is known as Adobe Audience Manager[.]

> 31. [W]hen Adobe Audience Manager is integrated with the Meta Pixel, data flows from the website through Adobe Audience Manager to Facebook.

> 33. In short, when the Adobe Audience Manager is integrated with the Meta Pixel, the URL headers of webpages visited by website users are: (a) routed from the website to Adobe and then Facebook; and (b) visible to both Adobe and Meta.

> 40. When someone watched a video on the Website, the Meta Pixel transmitted PII from these Meta cookies to Meta along with their URL data, PII and other information.

> 41. The combination of descriptive URL data from the Meta Pixel and PII from the Meta cookies embedded on the Website permitted Meta and Adobe to see who watched what video.

> 90. *Among the contents of communications, data transmissions and messages Meta and Adobe intercepted, read, attempted to read and learned* were the contents of Plaintiffs and California Subclass members' video watching behavior.

Compl. ¶¶ 19, 28, 31, 33, 40-41, 90 (emphasis added). Moreover, throughout the Complaint, Plaintiffs describe the functionality of the Meta Pixel and Adobe Audience Manager. *Id.* ¶¶ 15-34.

As shown above, Plaintiffs specifically allege Meta and Adobe read and attempted to read or learn the contents of Plaintiffs' communications, data transmissions and messages regarding their video watching behavior. *Id.* ¶ 90. Thus, Defendant cannot credibly dispute that Plaintiffs satisfy the "read" element of Clause Two.

Plaintiffs also specifically allege that the Meta Pixel "re-directs the content of [a] user's communication to Meta while the exchange of the communication between the user and website provider is still occurring." *Id.* ¶ 19. That is sufficient to satisfy the "in transit requirement." *See*

*Mata*, 2024 WL 5161955, at *6 ("Plaintiff pleads enough factual content for this Court to plausibly infer that Meta intercepted his communications while 'in transit.' Plaintiff alleges that Defendant incorporated third-party tracking technologies into its website so that 'whenever' Plaintiff watched video content, Meta obtained access"); *see also St. Aubin*, 2024 WL 4369675, at *6 (similar); *Campbell*, 77 F. Supp. 3d at 848 (accepting allegations that communications occur "in transit" and explaining consideration of evidence to the contrary would be "premature" absent a "more developed factual record."); *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1028 (N.D. Cal. 2014) (refusing to "assum[e]" communications are not intercepted in transit as that would "contradict[] Plaintiffs' allegations").

Plaintiffs' allegations regarding the interconnection between Adobe Audience Manager and the Meta Pixel are sufficient to show that the "in transit" requirement is satisfied as to Adobe, as well. Specifically, when viewed in the light most favorable to Plaintiffs, those allegations make clear that Adobe Audience Manager is merely part of the routing of Meta's in-transit interception. *See id.* ¶ 33. Because the Meta Pixel intercepts, reads and attempts to read or learn the contents of communications while they are in transit, it necessarily follows that Adobe Audience Manager, which comes first in the routing, does so as well.

In arguing that Plaintiffs fail to allege Meta and Adobe read or attempted to read or learn the contents of the communications at issue, Defendant ignores Plaintiffs' allegations in paragraph 90 of the Complaint. *See* MTD at 22. That Defendant has chosen to turn a blind eye to Plaintiffs' allegations does not change their import.

The cases relied on by Defendant in support of its argument that Plaintiffs' fail to satisfy Clause Two's "reading" requirement (MTD at 22) are distinguishable. Unlike here, those cases involved summary judgment motions where the facts had already been developed. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1092 (N.D. Cal. 2025) ("whether communications are 'read' in transit or only after storage is a fact-intensive question that depends on how the challenged technology and processes actually work"). Here, at this early stage, Plaintiffs' allegations must be accepted as true.

Regarding the "in transit" requirement, Defendant again improperly ignores Plaintiffs' allegations and attempts to rewrite the Complaint. MTD at 23. While Defendant correctly points out that Plaintiffs allege that Meta may store intercepted information for "years on end" (*id.*), Defendant ignores that in the paragraph preceding those allegations, Plaintiffs allege that the Meta Pixel tracks "the people and the type of actions they take" by "re-direct[ing] the content of the user's communication to Meta while the exchange of the communication between the user and the website provider is still occurring." Compl. ¶ 19. Viewed in the light most favorable to Plaintiffs, those allegations, combined with the allegations regarding Meta and Adobe reading and attempting to read or learn the content of the relevant communications, adequately satisfies the in-transit requirement of Clause Two. *See id.* ¶¶ 19, 90.

The cases cited by Defendant in support of its "in transit" argument (MTD at 23-24) are distinguishable. Unlike those cases, Plaintiffs' allegations are not conclusory, nor do they merely restate the language of CIPA § 631(a). Rather, Plaintiffs detail the functionality of the Meta Pixel and Adobe Audience Manager and, in connection therewith, set forth the facts showing how the communications at issue were intercepted, read and learned while in transit.

Finally, as discussed in § I, *supra*, Plaintiffs have adequately alleged that Meta and Adobe intercepted their communications.

**B.      Plaintiffs Adequately Allege Defendant Used and Attempted to Use the Unlawfully-Intercepted Communications.**

In cursory fashion, Defendant argues that, to "the extent Plaintiffs attempt to assert a derivative 'use' claim under the [sic] Clause Three, it too fails because finding a violation of Clause Three of Section 631(a) is contingent upon a finding of a violation of either Clause One or two [sic]." MTD at 24. As a threshold matter, Plaintiffs allege a violation of Clause Three. Specifically, Plaintiffs allege that Defendant used and endeavored to use the unlawfully intercepted communications to generate profits and increase revenues by, among other things, "using the intercepted communications to target its users with advertisements, knowing and having reason to know that the information was obtained through the unlawful interception of the

electronic communications of Plaintiffs and members of the Nationwide Class . . . ." Compl. ¶ 77. While the above-described allegations are specifically made within Plaintiffs' ECPA claim (*see id.*), Plaintiffs' CIPA § 631(a) claim incorporates those allegations. *See id.* ¶ 85. Because Plaintiffs adequately allege a violation of Clause Two, and further allege Defendant's use of the intercepted communications, it follows that Plaintiffs adequately allege a violation of Clause Three.

### C.    Plaintiffs' Adequately Allege Defendant Had the Requisite Intent to Aid Meta and Adobe's Interceptions.

Defendant contends Plaintiffs' CIPA § 631(a) claim fails because the "Complaint is entirely devoid of facts plausibly alleging that LinkedIn knowingly and intentionally helped Meta and Adobe willfully violate CIPA." MTD at 25. According to Defendant, "[b]ecause CIPA is a criminal statute, the *mens rea* requirement must be satisfied as to each element." *Id.* Defendant improperly attempts to insert a "criminal intent" standard into this civil case.

As a threshold matter, the issue of knowledge and intent are best addressed at a later stage of the proceeding. *See Lynch v. Express Scripts Holding Co.*, 2026 WL 17949550, at *7 (N.D. Cal. June 17, 2026). In all events, the plain text of Clause Four of CIPA § 631(a) "imposes liability on any person 'who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned' in clauses one through three." *St. Aubin*, 2024 WL 4369675, at *7 (quoting Cal. Penal Code § 631(a)). As worded, the statute does not include an intent standard. *Id.*

In *St. Aubin*, the court analyzed the two different approaches courts have taken with respect to Clause Four's requirements—namely: (a) adoption of the common law civil tort definition of aiding and abetting (advocated by Defendant here); and (b) adhering to the plain language of Clause Four which merely requires a showing that the defendant aided, agreed with, employed or conspired with another person. *Id.* at 8. The court found the latter approach more persuasive "because it more closely follows the language of the statute." *Id.*; *see also Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1130 (S.D. Cal. 2023). The court then examined whether the plaintiff sufficiently alleged that the defendant aided, agreed with, employed or conspired with

Meta and found that she had. *St. Aubin*, 2024 WL 4369675, at 8. In that case, the plaintiff alleged that the defendant: (a) chose to include the Meta Pixel on its website; (b) described how the Meta Pixel helped the defendant with its advertising; (c) described how the defendant assisted Meta with intercepting the identities and online activity of the defendant's patients; and (d) described how the defendant assisted the interceptions without the plaintiff's knowledge or consent. *Id.* The court found those allegations sufficient. *Id.*

As in *St. Aubin*, Plaintiffs have sufficiently alleged that Defendant aided, agreed with and conspired with Meta and Adobe to unlawfully intercept Plaintiffs' and class members' communications while they used the Website. Specifically, Plaintiffs allege the following:

2.  Plaintiffs bring this action in response to Defendant's practice of integrating, installing and embedding third-party tracking technologies from [Meta] and [Adobe] . . . into the Website and thereby enabling these third parties to intercept, capture and otherwise obtain, *inter alia*, users' personally identifiable information ("PII"), video-watching behavior, communications and related metadata.

19.  The Meta Pixel is a piece of code that advertisers, like Defendant, can integrate into their website. Once activated, the Meta Pixel "tracks the people and the type of actions they take."

28.  The Meta Pixel can be configured to integrate with tracking technology offered by Adobe that is known as Adobe Audience Manager[.]

29.  Adobe Audience Manger gives "digital advertisers and publishers the tools they need to control and leverage their data assets to help drive sales success."

30.  Through Adobe Audience Manager, website operators can create "Facebook Website Custom Audiences (WCA) pixels for the purpose of sending web-based Audience Manager audience segments to Facebook, for online ad targeting with improved transparency."

37.  At relevant times, each of LinkedIn Learning's pages hosting video classes contained code for the Meta Pixel and Adobe Audience Manager which, among other things, transmitted URL data in the form of full-string, descriptive URLs that contained detailed information regarding the webpage and video being viewed by a user, PII and other information to both Meta and Adobe. The URLs disclosed to Meta and Adobe described, among other things, the contents of the videos to which they linked.

43.  Because Defendant configured the Meta Pixel on the Website to integrate with the Adobe Audience Manager platform, Adobe received the same data from Defendant, appended its own data set to it, and then sent that data to Meta as well.

60. Defendant knowingly disclosed the PII and video viewing activity of Plaintiffs and members of the Nationwide Video Subclass because it knowingly integrated, embedded and installed the Meta Pixel and Adobe Audience Manager within LinkedIn Learning, and configured the two tracking technologies to integrate with each other.

76. [In violation of the ECPA], Defendant intentionally procured Meta and Adobe to intercept the electronic communications of Plaintiffs and members of the Nationwide Class, namely the transmissions of their confidential and sensitive information, including their PII and communications regarding the videos they viewed. At relevant times, Defendant knew that by integrating, installing and embedding the Meta Pixel and Adobe Audience Manager, Meta and Adobe would intercept the electronic communications of its users.

77. [In violation of the ECPA], Defendant used, or endeavored to use, the contents of the electronic communications of Plaintiffs and members of the Nationwide Class to generate profits and increase revenues by, *inter alia*, using the intercepted communications to target its users with advertisements, knowing and having reason to know that the information was obtained through the unlawful interception of the electronic communications of Plaintiffs and members of the Nationwide Class . . . ."

89. Plaintiffs and California Subclass members did not consent to the unlawful conduct of Defendant[.]

Compl. ¶¶ 2, 19, 28-30, 37, 43, 60, 76-77, 89; *see also id.* ¶ 85 (incorporating ECPA allegations).

The above-described allegations show that Defendant: (a) chose to integrate the Meta Pixel and Adobe Audience Manger into its Website; (b) enabled the Meta Pixel and Adobe Audience Manager to help with its advertising; (c) knew the purposes of the Meta Pixel and Adobe Audience Manager; (d) configured the Meta Pixel to integrate with Adobe Audience Manger to allow for better targeted advertising; and (e) assisted with Meta's and Adobe's interceptions without obtaining Plaintiffs' and class members' consent. Nothing more is needed.

Even if the Court were to apply the intent requirement advocated by Defendant, Plaintiffs' allegations still suffice. Viewed in the light most favorable to Plaintiffs, their allegations adequately allege that Defendant acted with Meta and Adobe in order to have them intercept the communications at issue without consent and in violation of the CIPA. *See Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) ("it is plausible to infer from [Defendant's] alleged affirmative act of integrating third-party code into its website that it knew Meta and [other third parties] would intercept [PII] and that Defendant had the purpose of employing Meta and [other third parties] to do so."); *James v. Walt Disney Co.*, 701 F. Supp. 3d

942, 954 (N.D. Cal. 2023) ("[I]t can reasonably be inferred that Disney entered into a contractual arrangement with Oracle under which Oracle would collect information from EPSN.com website users so that Disney could market to and attract new customers."); *Lynch*, 2026 WL 1749550, at *8 (similar); *Rusow v. Skinspirit Essential LLC*, 2025 WL 4657637, at *12 (N.D. Cal. Oct. 15, 2025) (finding "little question" that the plaintiff sufficiently alleged that the defendant was aware of and intended to allow third parties to intercept the plaintiff's communications); *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 684 (N.D. Cal. 2021) ("At the pleading stage interception may be considered intentional where a defendant is aware of the defect causing the interception but takes no remedial action.") (cleaned up).

## IV.    Plaintiffs Adequately State a Claim Under CIPA § 632.

Defendant argues that Plaintiffs' CIPA § 632 claim fails because that section of CIPA does not provide for aiding and abetting liability. MTD at 26. In support of this argument, Defendant quotes *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2024), which states that "the text of Penal Code § 632 does not expressly provide for derivative liability." *Id.* at 944. Troublingly, Defendant fails to inform this Court what the court in *Yeti* said next:

> However, under Penal Code § 31, "[a]ll persons concerned in the commission of a crime . . . or [who] aid and abet in its commission . . . are principals in any crime so committed." In applying this principle to civil lawsuits for violations of Penal Code § 632, courts have imputed the civil liability standard for aiding and abetting to determine the scope of derivative liability.

*Id.*[3] Several other courts have reached the same conclusion. *See, e.g.*, *Gianne v. Accor Mgmt. US Inc.*, 2026 WL 925522, at *8 (C.D. Cal. Mar. 31, 2026); *Smith*, 2025 WL 1085169, at *5; *Kristensen v. Credit One Bank, N.A.*, 2016 WL 11757832, at *6 (C.D. Cal. July 11, 2016); *Vera v. O'Keefe*, 791 F. Supp. 2d 959, 963 (S.D. Cal. 2011).

Defendant next argues that Plaintiffs fail to "allege facts that LinkedIn had the requisite knowledge and intent to aid and abet Meta and Adobe." MTD at 27. But, as set out *supra* at III.C, a plaintiff adequately pleads scienter by alleging that a defendant "knowingly installed the

---

[3] This misleading use of a legal authority constitutes a breach of Defense counsel's duty of candor owed to the Court. *See* Cal. R. Prof. Resp. 33(a)(1)-(2).

. . . Pixel . . . ." *Cole*, 807 F. Supp. 3d at 968-69.

Finally, Defendant argues the Court should dismiss Plaintiffs' Section 632 claim because they fail to allege that their communications were confidential. MTD at 27. That is incorrect. As alleged in the Complaint, Plaintiffs "had an objectively reasonable expectation of priva[cy] with respect to their PII and video watching behavior." Compl. ¶ 99. The reasonableness of that expectation is bolstered by the fact that Congress specifically protected such information when it passed the VPPA. *Eichenberger*, 876 F.3d at 983-84 (the "VPPA identifies a substantive right to privacy that suffers any time a video service provider discloses otherwise private information").

In addition, Plaintiffs had a reasonable expectation of privacy when they watched videos on LinkedIn Learning because such "communications have no recipients, and thus Plaintiffs could not reasonably expect that they would be forwarded or otherwise easily shared." *Yoon v. Meta Platforms, Inc.*, 2024 WL 5264041, at *7 (N.D. Cal. Dec. 30, 2024). And "while there is no reasonable expectation of privacy over URLs that only reveal basic identification information," there is "over URLs that disclose 'the particular document within a website that a person views.'" *Id.* (quoting *Brown v. Google LLC*, 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023). Here, Plaintiffs allege that the Meta Pixel on the Website "transmitted URL data in the form of full-string, descriptive URLs that contained detailed information regarding the webpage and video being viewed by a user . . . ." Compl. ¶ 37. At the same time, Defendant's Privacy Policy and Cookie Policy do not disclose "that it would share the URLs that users visit, or the videos that they watch . . . ." *Id.* ¶ 100. Accordingly, Plaintiffs had a reasonable expectation that this information would remain confidential.

## V.    Plaintiffs Adequately State a Claim Under CIPA § 638.51(a).

Defendant argues that Plaintiffs' pen register claim under CIPA § 638.51(a) fails because they allege not only that the Meta Pixel captured their "routing, addressing, or signaling information," but also their communications. MTD at 28. But, as this Court has previously held, "it is highly unlikely that the Legislature intended to permit the installation and use of pen registers so long as those devices also record the contents of a third party's communications." *In re Meta Pixel*

*Tax Filing Cases*, 793 F. Supp. 3d at 1153. Courts have widely cited the decision in *In re Meta Pixel Tax Filing Cases* approvingly. *See, e.g.*, *Gliksman v. Healthline Media, LLC*, 2026 WL 1908082, at *6 (N.D. Cal. July 2, 2026) ("This Court agrees with *In re Meta Pixel Tax Filing Cases . . . .*"); *Drummer v. Costar Grp., Inc.*, 2025 WL 3190656, at *5 (C.D. Cal. Oct. 22, 2025) ("The Court here agrees."); *Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 872 (N.D. Cal. 2025) ("I agree with Judge Pitts . . . ."); *Anderson v. Nat'l Collegiate Athletic Ass'n*, 2026 WL 925519, at *8 (C.D. Cal. Mar. 25, 2026) (quoting *In re Meta Pixel Tax Filing Cases* on legislative intent); *de Ayora v. Inspire Brands, Inc.*, 2025 WL 3707561, at *8 (N.D. Cal. Dec. 22, 2025) (same).

Defendant argues that the Court's holding in *In re Meta Pixel Tax Filing Cases* "renders the 'but not the contents of a communication' portion of the statute surplusage." MTD at 29. That is only true under Defendant's interpretation of the phrase:

> On the one hand, that language could be interpreted, as Meta contends, to define a pen register as a device that records *only* "dialing, routing, addressing, or signaling information" and that does *not* record "the contents of a communication." On the other hand, it could be interpreted to define a pen register as any device that records "dialing, routing, addressing, or signaling information" while clarifying that a device that records *only* "the contents of a communication" is not a pen register, and is instead subject solely to CIPA's wiretap provisions.

*In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d at 1153 (original emphasis). Under the latter interpretation, which the Court adopted, there is no superfluidity problem. Defendant's interpretation, on the other hand, creates its own superfluidity problem. *Id.* at 1154 (explaining that Defendant's interpretation "would effectively render Section 638.51(b)'s telecom exception superfluous."). Defendant also attempts to distinguish the facts of *In re Meta Pixel Tax Filing Cases* based on the functionality of the Meta Pixel (MTD at 29), wholly ignoring that this case involves the same technology.

Finally, Defendant argues that Plaintiffs' pen register claim fails because it "does not include allegations that any of *their* alleged communications were intercepted . . . ." MTD at 29-30 (original emphasis). But Defendant's own authority explains why this argument fails. In *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121 (N.D. Cal. 2025) (MTD at 30), the plaintiffs' claims failed because they did not allege that "they personally engaged in any communications

with the websites whose content could have been intercepted." *Id.* at 1136. Here, on the other hand, Plaintiffs each allege that they viewed videos on LinkedIn Learning and that information about those communications would have been disclosed because Defendant installed code for the Meta Pixel and Adobe Audience Manager on those pages. Compl. ¶¶ 4-9, 58, 60.

**VI.    Defendant's Consent Defense to Plaintiffs' ECPA Claim Lacks Merit.**

Other than rehashing its failed CIPA § 631(a) arguments, Defendant limits its challenge to Plaintiffs' ECPA claim to the contention that because the ECPA is a one-party consent statute, Plaintiffs' claim necessarily fails. MTD at 30. That contention does not hold up. As discussed in more detail below, the one-party consent exemption to ECPA liability does not apply to this case because: (a) the exception does not apply to entities that procure another to violate the ECPA, as Defendant did here; and (b) the crime-tort exception to the one-party consent exemption also applies. Plaintiffs pled both of these theories in the Complaint. Because Defendant chose not to address them, it has waived any challenge thereto. *See Cal. Pac. Bank v. Fed. Deposit Ins. Corp.*, 885 F.3d 560, 570 (9th Cir. 2018) (inadequately briefed arguments are waived). Absent waiver, any challenge would have been futile.

**A.    Defendant Unlawfully Procured Meta and Adobe to Intercept the Communications at Issue.**

Plaintiff alleges Defendant violated the ECPA by, *inter alia*, "intentionally procur[ing] Meta and Adobe to intercept the electronic communications of Plaintiffs and members of the Nationwide Class, namely the transmissions of their confidential and sensitive information, including their PII and communications regarding the videos they viewed." Compl. ¶ 76; *see also id.* ¶ 78 ("Defendant knew and had reason to know that it procured Meta and Adobe to intercept the electronic communications at issue and used the fruits thereof in violation of the ECPA"). The ECPA provides for liability against anyone who "intentionally intercepts, endeavors to intercept, or *procures another person to intercept or endeavor to intercept* any . . . electronic communication." 18 U.S.C. § 2511(1)(a) (emphasis added). The ECPA further provides that a person whose "electronic communication is intercepted, disclosed, or intentionally used" in

violation of the ECPA may bring a civil action against the entity that engaged in the violation. *See* 18 U.S.C. § 2520.

Here, Plaintiffs allege Defendant violated the ECPA by procuring and endeavoring to procure Meta and Adobe to intercept the electronic communications of Plaintiffs and Nationwide Class members. Compl. ¶ 119. Plaintiffs' allegations are sufficient to state an ECPA violation.

Plaintiff recognizes that some courts have stated that the ECPA does not provide for civil liability against an entity that procures another to intercept communications. *See, e.g., Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000). However, courts that have more-closely examined the ECPA and its legislative history have held that the ECPA does, in fact, provide for such civil liability. *See Dawson v. Univ. of Phoenix*, 2026 WL 92248, at *14 (N.D. Ill. Jan. 13, 2026); *Q.J. v. PowerSchool Holdings LLC*, 2025 WL 2410472, at *6 (N.D. Ill. Aug. 20, 2025); *Boseovski v. McCloud Healthcare Clinic, Inc.*, 2020 WL 68578, at *5-6 (E.D. Cal. Jan. 7, 2020); *Valentine v. Wideopen West Finance, LLC*, 288 F.R.D. 407, 412, n.3 (N.D. Ill. 2012); *Lonegan v. Hasty*, 436 F. Supp. 2d 419, 427-28 (E.D.N.Y. 2006). As the court in *Valentine* held, 18 U.S.C. § 2520 sets forth who may bring an action (*i.e.*, a person whose electronic communications were intercepted, disclosed or used) without limiting who may be sued as a defendant (*i.e.*, both the interceptor and the procurer of the interception may be sued). 288 F.R.D. at 412, n.3. "The procurer of an interception has indeed engaged in a violation of § 2511(1)(a), and may thus be sued by the person whose communication was intercepted." *Id.*; *see also Boseovski*, 2020 WL 68578, at *5-6 (discussing legislative history); *Dawson*, 2026 WL 92248, at *14 ("the victim of the wiretap may sue any person or entity who engaged in the violation, including procuring the violation"); *Lonegan*, 436 F.Supp.2d at 427-28.

Importantly, the ECPA's exemption to liability for parties to a communication, *see* 18 U.S.C. § 2511(2)(d), does not apply to a party that procures a third party to intercept a communication. As shown below, the exemption only applies to the interception—not the procurement or use of relevant communications. *See* 18 U.S.C. § 2511(2)(d).

18 U.S.C. § 2511(2)(d) provides, in relevant part, that "[i]t shall not be unlawful . . . for a

person . . . *to intercept* a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties has given prior consent to such interception . . . ." 18 U.S.C. § 2511(2)(d) (emphasis added). The statute provides no exemption for an entity that procures another to intercept a communication. *See id.*

"It is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barnhart v. Sigmon Coal, Co.*, 534 U.S. 438, 452 (2002) (internal quotations and related citations omitted). Here, Congress: (a) expressly provided for liability for entities, like Defendant, that procure or endeavor to procure others to intercept communications, 18 U.S.C. § 2511(1)(a); but (b) omitted such entities from those exempted from liability under 18 U.S.C. § 2511(2)(d). It follows that Congress acted "intentionally and purposely."

**B.      The Crime-Tort Exception to the ECPA's One-Party Consent Exemption Applies.**

A party to an intercepted communication is generally not liable under the ECPA. 18 U.S.C. § 2511(2)(d). However, that exception does not apply if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or the laws of the United States or of any State" (the "crime-tort exemption"). *Id.* Importantly, "the existence of a lawful purpose does not mean that the interception is not also for a tortious or unlawful purpose." *Sussman v. Am. Broad. Companies, Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999); *see also Riganian*, 791 F. Supp. 3d at 1090-91; *R.S. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025).

Here, Plaintiffs allege Defendant procured Meta and Adobe to intercept Plaintiffs and Nationwide Class members' communications for the purpose of violating the VPPA, the CIPA and the privacy rights of Plaintiffs and class members. Compl. ¶ 82. In similar circumstances, courts have allowed ECPA claims to proceed where the defendant arguably was committing the crime/tort of disclosing: (a) video watching behavior, *see Dawson*, 2026 WL 92248, at *15; (b)

sensitive medical information in violation of the Health Insurance Portability and Accountability Act. *See In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *4 (N.D. Cal. July 15, 2024); *Lynch*, 2026 WL 1749550, at *5; *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901 (C.D. Cal. 2024); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *5 (W.D. Wash. Nov. 14, 2024); *A.D. v. Aspen Dental Mgmt., Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024); and (c) protected education records. *See Q.J.*, 2025 WL 2410472, at *6. This Court should follow the above-cited cases and find that Plaintiffs have plausibly alleged the applicability of the crime-tort exception.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss in its entirety. To the extent the Court grants any part of Defendant's motion to dismiss, Plaintiffs respectfully request that the Court grant them leave to file an amended complaint. *See Roney v. Miller*, 705 F. App'x 670, 671 (9th Cir. 2017) (lower court erred by denying leave to amend after dismissing amended complaint).

Dated: August 4, 2026

**DRURY LEGAL, LLC**

By: */s/ Scott R. Drury*
         Scott R. Drury

Scott R. Drury (State Bar No. 355002)
6 Carriage Lane
Highwood, Illinois 60040
Telephone: (312) 358-8225
E-Mail: scott@drurylegal.com

**ARISOHN LLC**
Joshua D. Arisohn (admitted *pro hac vice*)
94 Blakeslee Rd.
Litchfield, CT 06759
Telephone: (646) 837-7150
Email: josh@arisohnllc.com

**KINGFISHER LAW APC**
Nithin Kumar
800 W 1st St., #1803
Los Angeles, CA 90012

Telephone: (408) 930-3580
Email: nithin@kingfisherlawapc.com

*Attorneys for Plaintiffs*