KEKER, VAN NEST & PETERS LLP
BENJAMIN BERKOWITZ - # 244441
bberkowitz@keker.com
MATAN SHACHAM - # 262348
mshacham@keker.com
CHRISTINA LEE - # 314339
clee@keker.com
SPENCER MCMANUS - # 322824
smcmanus@keker.com
ROBYN PARISER - # 335017
rpariser@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendant LINKEDIN CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARISSA MELUNSKY, DANA CUTOLO, KATE SHIMSHOCK, MAUREEN CAREY, CAN OZDORUK and SHUBHRANSHU GUPTA, individually and on behalf of all other persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. 5:26-cv-03460-PCP<br><br>**REPLY IN SUPPORT OF DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS**<br><br>Date: September 24, 2026<br>Time: 10:00 a.m.<br>Dept.: Ctrm. 8, 4th Flr.<br>Judge: Hon. P. Casey Pitts<br><br>Date Filed: April 23, 2026<br>Trial Date: None set |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 1

- A. Plaintiffs fail to allege that *their* PII was disclosed in violation of the VPPA. ..... 1
- B. Plaintiffs' consent forecloses their ECPA and CIPA claims. ..... 2
- C. Plaintiffs fail to plead a derivative CIPA § 631 claim. ..... 5
  - 1. Plaintiffs fail to plead a predicate violation of CIPA § 631 ..... 5
    - a. Plaintiffs fail to state a claim under Clause Two. ..... 5
    - b. Plaintiffs fail to state a claim under Clause Three. ..... 7
  - 2. Plaintiffs' Section 631 claim should be dismissed for the additional independent reason that they fail to plead the requisite intent. ..... 8
- D. Plaintiffs have not and cannot state a claim under CIPA § 632 ..... 9
- E. Plaintiffs also have not and cannot state a claim under CIPA § 638.51(a). ..... 11
- F. The one-party consent rule bars Plaintiffs' ECPA claim. ..... 13

III. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6, 10

*Brown v. Google LLC*,
685 F. Supp. 3d 909 (N.D. Cal. 2023) ........ 11

*Campbell v. Facebook, Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ........ 7

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ........ 7

*Cole v. LinkedIn Corp.*,
807 F. Supp. 3d 959 (N.D. Cal. 2025) ........ 2, 10

*D'Antonio v. Smith & Wesson Inc.*,
820 F. Supp. 3d 928 (N.D. Cal. 2026) ........ 1, 7

*Dellasala v. Samba TV, Inc.*,
2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) ........ 7

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ........ 9, 15

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) ........ 5, 12

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 15

*Doe v. Talkiatry Mgmt. Servs., LLC*,
816 F. Supp. 3d 1206 (C.D. Cal. 2026) ........ 14

*In re Eastport Assocs.*,
935 F.2d 1071 (9th Cir. 1991) ........ 9, 12

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ........ 11

*Gaige v. Exer Holding Co., LLC*,
2025 WL 559719 (C.D. Cal. Jan. 30, 2025) ........ 13

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ........ 3

*J.S. v. Spring Fertility Holdings, LLC*,
2026 WL 1483490 (N.D. Cal. May 27, 2026) .......... *passim*

*Jones v. Regents of Univ. of Cal.*,
2022 WL 1137089 (N.D. Cal. Apr. 18, 2022) .......... 3, 13

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 14

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 2

*Lynch v. Express Scripts Holding Co.*,
2026 WL 1749550 (N.D. Cal. June 17, 2026) .......... 3

*Mata v. Zillow Grp., Inc.*,
2024 WL 5161955 (S.D. Cal. Dec. 18, 2024) .......... 7

*Merical v. The Joint Corp.*,
2026 WL 2225531 (E.D. Cal. Aug. 3, 2026) .......... 14

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) .......... 12

*Ortiz v. Foris Dax, Inc.*,
2026 WL 1430720 (N.D. Cal. May 21, 2026) .......... 1

*Planned Parenthood Fed'n of Am., Inc. v. Newman*,
51 F.4th 1125 (9th Cir. 2022) .......... 14

*R.C. v. Sussex Publishers, LLC*,
2025 WL 1735994 (N.D. Cal. June 23, 2025) .......... 6

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) .......... 5, 8

*Roe v. Amgen Inc.*,
2024 WL 2873482 (C.D. Cal. June 5, 2024) .......... 13, 15

*Rusow v. Skinspirit Essential LLC*,
2025 WL 4657637 (N.D. Cal. Oct. 15, 2025) .......... 15

*Shah v. MyFitnessPal, Inc.*,
824 F. Supp. 3d 906 (N.D. Cal. 2026) .......... 1

*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 5

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024) .......... 8, 9, 10

*St. Aubin v. Carbon Health Tech., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024)....................7, 8

*Sussman v. Am. Broad. Cos., Inc.*,
186 F.3d 1200 (9th Cir. 1999) ....................14, 15

*Torres v. Prudential Fin., Inc.*,
2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ....................5

*United States v. LKAV*,
712 F.3d 436 (9th Cir. 2013) ....................13

*Walsh v. Dollar Tree Stores, Inc.*,
2025 WL 2939229 (N.D. Cal. Oct. 16, 2025)....................8

*Wiley v. Universal Music Grp., Inc.*,
826 F. Supp. 3d 1121 (N.D. Cal. 2025) ....................1

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................7, 13

*Yockey v. Salesforce, Inc.*,
745 F. Supp. 3d 945 (N.D. Cal. 2024) ....................11

*Yoon v. Meta Platforms, Inc.*,
2024 WL 5264041 (N.D. Cal. Dec. 30, 2024)....................11

**State Cases**

*People v. Nuckles*,
56 Cal. 4th 601 (2013) ....................12

**Federal Statutes**

ECPA .................... *passim*

HIPAA ....................14, 15

**State Statutes**

Cal. Pen. Code § 31....................10

Cal. Pen. Code § 631.................... *passim*

Cal. Pen. Code § 632....................9, 10, 11

Cal. Pen. Code § 638.50(b)....................12

Cal. Pen. Code § 638.51....................11

## I. INTRODUCTION

Plaintiffs' Opposition confirms that their VPPA, CIPA, and ECPA claims are all inadequate. Plaintiffs ignore much of the case law and many of the arguments LinkedIn raises in its Motion. And they repeatedly ask this Court to accept their conclusory allegations as sufficient. This Court should decline to do so, and it should dismiss Plaintiffs' entire Complaint.

## II. ARGUMENT

### A. Plaintiffs fail to allege that *their* PII was disclosed in violation of the VPPA.

Plaintiffs fail to point to *any* pleaded facts regarding their specific use of LinkedIn or Facebook that could show that LinkedIn disclosed *their* PII. They instead argue that they can bypass this requirement by alleging an amorphous theory of "systematic" disclosure. Opp. at 5-6. But they cite no legal authority for this argument. To the contrary, courts routinely find allegations of systematic disclosure inadequate. In fact, this Court has repeatedly found in the context of wiretapping claims that, "[i]n the absence of any allegation that ***plaintiffs themselves*** interacted with the website in a manner that involved communications whose contents could have been intercepted, they fail to plead the elements of a valid . . . claim."[1] *D'Antonio v. Smith & Wesson Inc.*, 820 F. Supp. 3d 928, 936 (N.D. Cal. 2026); *Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 919 (N.D. Cal. 2026) (same); *Wiley v. Universal Music Grp., Inc.*, 826 F. Supp. 3d 1121, 1136 (N.D. Cal. 2025) (same); *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *5 (N.D. Cal. May 21, 2026) ("Courts in this district have dismissed CIPA claims where plaintiffs fail to allege that they personally engaged in qualifying communications."). Plaintiffs ignore this line of cases.

Here, by Plaintiffs' own admission, the only facts in the Complaint regarding their personal interactions with the relevant technologies are that "they have: (a) long had Facebook accounts; (b) been users of LinkedIn Learning for years; and (c) watched several videos through that platform." Opp. at 6, citing Compl. ¶¶ 4-9. These generic allegations are insufficient to state a VPPA claim for at least three reasons. ***First***, Plaintiffs allege that the PII is transmitted to Meta only if the user accessed their Facebook account from the same browser that they used to watch videos on LinkedIn Learning. Compl. ¶ 21. But Plaintiffs do not allege that they actually accessed

[1] Unless otherwise stated, all emphasis has been added and internal marks and citations removed.

Facebook and watched a video on LinkedIn Learning from the same browser. In fact, they fail to allege that they accessed Facebook at all aside from when they created accounts "more than 10 years ago." Compl. ¶¶ 4–9. ***Second***, they fail to allege when any Plaintiff subscribed to LinkedIn Premium or watched a video on LinkedIn Learning. ***Third***, the Complaint contains no facts about when LinkedIn installed the Pixel or Audience Manager or when LinkedIn purportedly "integrated" or "configured" these technologies as alleged. In sum, Plaintiffs fail to plead that they watched a video on LinkedIn Learning on the same browser from which they accessed Facebook and watched the video after the relevant pixel and cookie technologies were implemented, all of which is required to disclose their PII.

Contrary to Plaintiffs' representation, LinkedIn is not arguing that Plaintiffs must include screenshots from their Facebook accounts in their Complaint to meet this requirement. *See* Opp. at 6. But this Court found similarly scant allegations in *Cole* plausible because "the complaint includes a screenshot from Cole's Facebook account showing that Facebook received data about her from LinkedIn." *Cole v. LinkedIn Corp.*, 807 F. Supp. 3d 959, 968 (N.D. Cal. 2025). That additional specificity was critical to the Court's holding, as it was the only fact plausibly alleging the disclosure of Cole's information. Because this Complaint contains *no* facts regarding Plaintiffs' own use of the technologies, they fail to state a plausible VPPA claim.

**B. Plaintiffs' consent forecloses their ECPA and CIPA claims.**

Both LinkedIn and Meta informed Plaintiffs of the data practices alleged here, so Plaintiffs cannot plead lack of consent, which is dispositive as to their ECPA and CIPA claims. Plaintiffs attempt to avoid this conclusion by arguing that the Court cannot consider consent at the pleading stage, that LinkedIn did not prove that they agreed to the terms at issue, and that the disclosures are not specific enough. None of these arguments succeeds.

***First***, "[c]onsideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025) (dismissing ECPA and CIPA claims because plaintiffs consented to alleged practices). Plaintiffs simply ignore the numerous holdings from this district dismissing CIPA and ECPA claims where, as here, "the express provisions of the Privacy Policy and TOS . . . ostensibly

contradict [plaintiff's] bare allegation that he did not consent." *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1137 (N.D. Cal. 2015); *see also* Mtn. at 8-9.

***Second***, courts regularly look to a defendant's terms and policies—which these Plaintiffs rely on (and misrepresent) in their Complaint, *see* Compl. ¶ 100—to determine whether a plaintiff plausibly alleged lack of consent.[2] *See* Mtn. at 8-10 (citing and discussing cases). The *Garcia* court dismissed a CIPA claim where, as here, "the documents proffered by Defendants establish that in order to sign up for and use [Defendant's services], a user must agree to the TOS and Privacy Policy" that disclosed the challenged conduct. 78 F. Supp. 3d at 1136. The court rejected plaintiff's argument that he did not agree to the terms because, "given the express provisions of the Privacy Policy and TOS [that consent is required for use], which ostensibly contradict his bare allegation that he did not consent, Plaintiff must allege additional facts to support his claim." *Id.* at 1137. So too here. These Plaintiffs do not even argue (or allege) that they were not aware of or never assented to these terms. Nor could they; they allege they were LinkedIn and Facebook users and the policies themselves make clear that user assent is required to use the services. Pariser Decl., Ex. E § 1.1 ("When you use [LinkedIn's] Services you agree to all of these terms. Your use of our Services is also subject to our Cookie Policy and our Privacy Policy, which covers how we collect, use, share, and store your personal information."); *id*. Ex. F ("If you do not agree to these Terms, then do not access or use Facebook. . . . By using [Meta's] Products, you agree that we can show you ads that we think may be relevant to you and your interests."). Plaintiffs do not dispute that their use of LinkedIn and Facebook was governed by these policies.

Plaintiffs complain generally that the companies may have had different versions of the disclosure in place at different times, yet they do not dispute that they agreed to the versions that LinkedIn submitted, which were all in place at the time they filed their Complaint and some of which have been effective for the entire statute of limitations period for their CIPA (one year) and ECPA (two years) claims. *See Jones v. Regents of Univ. of Cal.*, 2022 WL 1137089, at *2 (N.D. Cal. Apr. 18, 2022) (viewing "failure to oppose Defendants' arguments as a concession"); *Lynch*

[2] The relevant terms and policies are incorporated by reference and properly subject to judicial notice for the reasons explained in LinkedIn's Request for Judicial Notice and the related Reply.

*v. Express Scripts Holding Co.*, 2026 WL 1749550, at *4 (N.D. Cal. June 17, 2026) (same). Moreover, to the extent there is a lack of clarity about timing, that is a problem of Plaintiffs' own making because they've failed to allege any facts as to when they actually used LinkedIn or Facebook (as discussed above).

***Third***, as detailed in LinkedIn's Motion, these agreements disclose that LinkedIn may collect and share the "contents" of the communications and the "record information" at issue. The Privacy Policy specifies that LinkedIn may "log usage data . . . such as when you view or click on content (e.g., **learning video**)" use "[d]ata from . . . **page visits**" and the "**videos you watch**" (*i.e.*, the content at issue). Pariser Decl., Ex. A §§ 1.3, 2.4. It specifies that LinkedIn may collect and allows third parties to collect "**device IDs** . . . **ad ID**, **IP address**, **operating system** and **browser information**" (*i.e.*, the record information at issue). *Id.* § 1.4; *see also* Pariser Decl., Ex. B (same). It discloses that third parties may place cookies on users' browsers to directly collect data about user's interactions with LinkedIn, Ex. A § 1.4, and the Cookie Policy explains how these technologies work and what information they collect. *See* Pariser Decl., Ex. B. Meta's policies also disclose that Meta uses cookies to gather information, "including information about your use of other websites and apps, whether or not you are registered or logged in." Pariser Decl., Ex. H.

Plaintiffs argue that LinkedIn's disclosures are insufficient because "Defendant does not explain what it means to 'log usage data' or track page visits or video." Opp. at 10. But Plaintiffs do not explain what is unclear about this language, which they use themselves in pleading their claims. *See, e.g.*, Compl. ¶ 34 ("[T]he Adobe Tracker *tracks* visitors' communications and metadata."). Plaintiffs also argue that this language only discloses what LinkedIn may collect, rather than what it shares. But this ignores that LinkedIn's policies further disclose that (1) it "may share your personal information, including information about your visits to LinkedIn, with our partners," Pariser Decl., Ex. D. § 1, and (2) that third parties may place cookies on users' browsers to collect data, Ex. A § 1.4. Meta's policies do the same. *See* Pariser Decl., Ex. H (disclosing how Meta gathers information about users' interactions with third parties). The Ninth Circuit has found similar disclosures sufficient. In examining Meta's disclosures, it upheld the

dismissal of ECPA and CIPA claims because the relevant Terms provided that "[w]e collect information when you visit or use third-party websites and apps that use our Services" and use the information for targeted advertising. *Smith v. Facebook, Inc.*, 745 F. App'x 8, 8 (9th Cir. 2018). The Ninth Circuit held that a "reasonable person viewing those disclosures would understand that Facebook maintains the practices of (a) collecting its users' data from third-party sites and (b) later using the data for advertising purposes." *Id.* at 9. So too here.

**C. Plaintiffs fail to plead a derivative CIPA § 631 claim.**

Plaintiffs concede that they have not pleaded a direct Section 631 claim against LinkedIn and seek to plead only a derivative claim, Opp. at 11 n.2, which requires them to allege that Meta or Adobe "has violated one of the first three clauses of section 631(a), and that [LinkedIn] aided, agreed with, employed, or conspired with [Meta or Adobe] to commit those unlawful acts." *Rodriguez*, 722 F. Supp. 3d at 1113–14. They have not done so, and their effort to argue otherwise turns on conclusory allegations that multiple courts have found insufficient. Nor do they overcome their failure to satisfy the intent requirement.

**1. Plaintiffs fail to plead a predicate violation of CIPA § 631.**

**a. Plaintiffs fail to state a claim under Clause Two.**

***Read or attempted to read***. Plaintiffs agree that "liability under prong two of section 631 requires some effort at understanding the substantive meaning of the message, report or communication." *Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025); *see also* Opp. at 12. They must therefore allege specific facts showing that Meta and Adobe "do something more than just intercept the communication while it is in transit to be held liable." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118 (N.D. Cal. 2025).[3] But, as shown in their Opposition, the only relevant facts alleged are that Pixel and Audience Manager reroute or intercept data. *See* Opp. at 13, quoting Compl. ¶¶ 19, 28, 31, 33, 40-41 (alleging that these technologies, re-direct, route, transmit, and intercept information). They allege that Meta and Adobe received information that would have "permitted" them to learn about users' video

[3] Plaintiffs argue that *Torres* and *Eating Recovery* are inapposite because they involve summary judgement motions. Opp. at 14. But these cases have been cited for their holdings regarding the meaning and requirements of the statute, which is critical on a motion to dismiss.

viewing history at some unspecified time and that Meta intercepts and then "stores this data on its own servers," Compl. ¶¶ 19-20, but such allegations fail to state a Section 631 claim.

Plaintiffs' conclusory allegation that "Meta and Adobe intercepted, read, attempted to read and learned were the contents of Plaintiffs and California Subclass members' video watching behavior," Compl. ¶ 90, does not get them any further. In the absence of specific facts, the Court need not accept as true an allegation that merely recite the elements of an action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). *Sussex Publishers*, on which Plaintiffs rely, only underscores this point. There, the court found the "read" element satisfied because plaintiffs "allege Google—while users are inputting information—'*analyzes and interprets* the contents of a user's transmissions in order to select what portion of the communications is further processed by Google for its analytics and advertising purposes.' . . . [T]his initial real time process of selection for advertising purposes is an 'effort at understanding the substantive meaning of the message, report or communication.'" 2025 WL 1735994, at *5 (N.D. Cal. June 23, 2025). The Complaint here contains no such specific facts.

***While in transit.*** Plaintiffs' "while in transit" allegations are similarly deficient and, in fact, are undermined by their own allegations that suggest that any "reading" discernable in the Complaint is asynchronous. Specifically, Plaintiffs allege that Meta and Adobe "re-direct" their communications and store them for years. Compl. ¶¶ 19, 20. But the case law shows that *redirecting* a communication is not the same as *reading* a communication while it is in transit.

Many courts in this district have considered similar allegations regarding the "while in transit" requirement and found them insufficient, including in *Cody*, *J.S.*, and *Dellasala*. Mtn. at 14-16. Plaintiffs' Opposition attempts to distinguish these cases by summarily arguing that "[u]nlike those cases, Plaintiffs' allegations are not conclusory." Opp. at 14-15. This argument either misreads or misrepresents the case law. The *J.S.* court dismissed a Section 631 claim because allegations that LinkedIn used its own Insight Tag to "'track[] their activity the moment they entered the websites' are insufficient to allege that LinkedIn intercepted *and read* the communications in real time." 2026 WL 1483490, at *5 (N.D. Cal. May 27, 2026). In *Dellasala*,

the court held that allegations of real time interception failed to state a claim because they "do not support any inference as to how the content is *simultaneously read*." 2026 WL 1138358, at *6 (N.D. Cal. Apr. 21, 2026). The plaintiffs in *Dellasala* alleged that the defendant "*processes* and stores this data on its own systems—which it uses to create audiences, panels, and otherwise service advertising needs." *Id*. (original emphasis). The court held these allegations "do not support a plausible inference Samba *read* or *learned* the contents of Plaintiffs' communications while in transit [as opposed reading them once on their servers,] as Section 631 requires." *Id*. at *7 (original emphasis). Similarly, the *Cody* plaintiff alleged that the defendant "routed in real time [communications] as they occur," but the court held that those *routing* allegations did not satisfy the *reading* while in transit requirement. 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (cleaned up).

The authorities cited by Plaintiffs, which predate *Cody*, *J.S.*, and *Dellasala*, fail to consider the critical question here, which is whether the statute requires a defendant to *read* communications, as opposed to merely intercept them, while in transit. *See Campbell v. Facebook, Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014); *Mata v. Zillow Grp., Inc.*, 2024 WL 5161955, at *6 (S.D. Cal. Dec. 18, 2024); *St. Aubin v. Carbon Health Tech., Inc.,* 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024). As shown in the more recent cases *supra*, courts now find that, per the plain language of the statute, Section 631 requires defendants to "*simultaneously read*" intercepted communications. *Dellasala*, 2026 WL 1138358, at *6. Moreover, *In re Yahoo Mail Litig.* supports LinkedIn's interpretation of the statute, as central to that court's decision was the allegation that "Yahoo intercepts *and scans its users' incoming emails for content* during transit and before placing the emails into storage." 7 F. Supp. 3d 1016, 1036 (N.D. Cal. 2014). There is no such allegation here, which dooms Plaintiffs' claim.

***No interception of <u>Plaintiffs'</u> communications.*** Plaintiffs also fail to plead a predicate violation because, as shown *supra* Section II.A, "plaintiffs do not specifically allege that *their* communications were intercepted." *D'Antonio*, 820 F. Supp. 3d at 936 (original emphasis).

**b. Plaintiffs fail to state a claim under Clause Three.**

Plaintiffs agree that their Clause Three claim depends on the success of their Clause Two

claim. *See* Opp. at 16. Accordingly, this claim fails for the same reasons explained above.

**2. Plaintiffs' Section 631 claim should be dismissed for the additional independent reason that they fail to plead the requisite intent.**

Plaintiffs have not pleaded, and cannot plead, that LinkedIn intentionally aided Meta and Adobe for the purpose of violating CIPA. To start, Plaintiffs wrongly argue that this Court cannot consider intent at the pleading stage. As even the cases cited by Plaintiffs show, courts in this Circuit routinely adjudicate intent allegations at the pleading stage. *See, e.g., St. Aubin*, 2024 WL 4369675, at *7-8; *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 943 (N.D. Cal. 2024) (dismissing claim for failure to plead intent).

Next Plaintiffs argue that this Court should follow *St. Aubin* and "adher[e] to the plain language of Clause Four which merely requires a showing that the defendant aided, agreed with, employed or conspired with another person," rather than applying the common law civil aiding and abetting framework. Opp. at 16; *see St. Aubin*, 2024 WL 4369675, at *8. There are two problems with this argument. First, Plaintiffs ignore all of the case law cited in LinkedIn's Motion holding that the common law aiding and abetting definition applies here. *See* Mtn. at 17-18; *see also Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1123 (S.D. Cal. 2024) (applying common law definition and citing cases re same). Second, strictly adhering to the language of Clause Four yields the same result. Judge Lin recently held that plain language of Clause Four

> prohibits a defendant from aiding, agreeing with, or employing a third party '***to*** unlawfully do, or permit, or cause' the third party to act in violation of the wiretapping statute. Cal. Pen. Code § 631(a). That language indicates that the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute. At the very least, that requires both knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts.

*YETI Coolers, LLC*, 754 F. Supp. 3d at 942–43 (original emphasis).

Consistent with *Rodriguez* and in contrast to *St. Aubin*, several courts in this district have more recently held that the defendant's intent to install pixel technology is not enough. *See, e.g., id.*, *Walsh v. Dollar Tree Stores, Inc.*, 2025 WL 2939229, at *17 (N.D. Cal. Oct. 16, 2025) (same); *J.S.*, 2026 WL 1483490, at *4 ("the statute requires at least knowledge that the third parties' conduct would violate the statute"). This makes good sense, as there is nothing inherently

unlawful about installing pixels or allowing cookies on a website. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 841 (N.D. Cal. 2024). Once again, Plaintiffs fail to respond to this line of cases. This court should therefore find, consistent with other courts in this district, that to be liable under Clause Four, the defendant must know and specifically intend to help a third party violate CIPA.

Plaintiffs have not and cannot plead that LinkedIn intended to help Meta and Adobe violate CIPA, especially in light of LinkedIn's policies informing and requiring the consent of users regarding third-party access to the very information that Plaintiffs allege was intercepted in violation of Section 631, *i.e.*, the LinkedIn Learning webpages users visited. Any discernable allegation that LinkedIn *intended* to aid Meta and Adobe make *unauthorized* interceptions are implausible in light of LinkedIn's policies, as well as Meta's policies disclosing and requiring consent to tracking activities on third-party websites. *See* Pariser Decl., Exs. A-H; *see also Doe I*, 741 F. Supp. 3d at 841 (finding insufficient intent to violate CIPA in light of Google's policies). Plaintiffs fail to address LinkedIn's argument that these disclosures are dispositive as to plausibility of their intent allegations.[4] Moreover, none of the cases that Plaintiffs cite in their Opposition considers such express and specific privacy policies as those at issue here.

**D. Plaintiffs have not and cannot state a claim under CIPA § 632.**

In addition to their failure to plead that their own communications were intercepted for the reasons discussed *supra* Section II.A, Plaintiffs cannot state a derivative claim under Section 632 for three other independent reasons.

***No Derivative Liability.*** Plaintiffs do not and cannot dispute that the text of Section 632 does not expressly provide for derivative liability, unlike the text of Section 631, as multiple courts have recognized. *J.S.*, 2026 WL 1483490, at *6; *YETI Coolers*, 754 F. Supp. 3d at 944. And Plaintiffs offer no response to LinkedIn's argument in its Motion that reading derivative language into Section 632 would render the derivative language in Section 631 surplusage, thereby violating established tenants of statutory construction. *See In re Eastport Assocs.*, 935 F.2d 1071, 1080 (9th Cir. 1991) ("[S]tatutes should be construed to give their terms meaning and

[4] Plaintiffs' argument regarding consent to these terms (discussed above) has no effect on the fact that the disclosures are relevant to LinkedIn's intent. *See Doe I*, 741 F. Supp. 3d at 841.

effect, avoiding interpretive constructions which render some words surplusage.”).

Instead, Plaintiffs argue that Penal Code Section 31 creates an imputed derivative liability claim under Section 632, and they point to *YETI* and several other cases that reach that conclusion. But Plaintiffs ignore that the court in this District that most recently addressed this argument rejected it as a matter of law. *See J.S.*, 2026 WL 1483490, at * 6 (“The Court is not persuaded that § 31 saves [the] claims for derivative liability. . . . Though § 31 applies in criminal cases, there is no binding or persuasive authority holding it applies in civil cases as well.”). Moreover, the Court in that case held that a plaintiff must affirmatively plead liability under Penal Code Section 31, *id.*, which Plaintiffs do not do in their Complaint.[5]

***No Intent.*** Even if the Court reads derivative language into Section 632 where none appears, Plaintiffs still fail to adequately plead intent for the same reasons they’ve failed to plead intent for their derivative Section 631 claim. Plaintiffs only cite *Cole* to argue otherwise. But *Cole* concerned a direct VPPA claim, not a derivative CIPA claim, which involves a different intent standard. *See Cole*, 807 F. Supp. 3d at 968-69. *Cole*’s intent holding is inapplicable here.

***No Confidentiality***. Section 632 only protects confidential communications, which excludes those made “in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.” Cal. Pen. Code § 632(c). Rather than relying on well pleaded facts, Plaintiffs again rely on a conclusory allegation to argue that they sufficiently pleaded an objectively reasonable expectation that their webpage visits (i.e. the actionable “communications”) were confidential. *See* Opp. at 20, quoting Compl. ¶ 99. (“Plaintiffs ‘had an objectively reasonable expectation of priva[cy] with respect to their PII and video watching behavior.’”). This is not sufficient. *See Twombly*, 550 U.S. at 555.

Moreover, the single “fact” Plaintiffs cite from their Complaint contradicts the express terms of LinkedIn’s judicially noticeable Privacy Policy and Cookie Policy. They assert that “Defendant’s Privacy Policy and Cookie Policy do not disclose ‘that it would share the URLs that users visit, or the videos that they watch . . . .’” Opp. at 20, quoting Compl. ¶ 100. This allegation

[5] Plaintiffs fault LinkedIn for not quoting the *YETI* language regarding CPC § 31, but Plaintiffs did not plead Section 31 in their Complaint and LinkedIn did not address it in its Motion. Instead, LinkedIn correctly cited *YETI* only for its argument regarding the text of Section 632.

is implausible in light of the language of those policies, which specify that LinkedIn may share data about "when you view or click on content (e.g., learning video)" as well as users' "page visits" and "videos you watch." Pariser Decl., Ex. A § 1.3, 2.4; *see also* Mtn. at 2-4. Plaintiffs do not explain how such terms—which tell users that LinkedIn may share their video viewing data with third parties—could possibly give rise to a reasonable expectation of confidentiality in that viewing data. This allegation is also implausible in light of Meta's disclosures, which likewise tells users that Meta can track their activities on third-party websites. *See* Mtn. at 4-5.

Plaintiffs do not offer any reasonable argument as to why this Court should depart from the presumption that Internet communications are not confidential. *See Yockey v. Salesforce, Inc.*, 745 F. Supp. 3d 945, 955 (N.D. Cal. 2024); *see also* Mtn. at 20 (citing cases). Courts typically overcome this presumption when the communication at issue involves personal health information, which is not alleged here. *See, e.g., Yockey*, 745 F. Supp. 3d at 955. Plaintiffs' argument that the communications here are unique because of the VPPA is a red herring, as the VPPA protects fundamentally different information than is actionable under CIPA § 632.

None of the cases Plaintiffs cite in their Opposition supports a finding that the communications here were confidential. *Eichenberger* has nothing to do with Section 632, as it only stands for the proposition that plaintiffs pleading a VPPA claim have Article III standing. *See* 876 F.3d 979, 983 (9th Cir. 2017). The facts in *Yoon* were materially different than those here, as there the defendant allegedly "made false representations and warranties that it does not collect" the communications at issue. 2024 WL 5264041, at *7 (N.D. Cal. Dec. 30, 2024). And *Brown* fares no better, as there the URLs collected information about plaintiffs' "unique search terms" regarding their "sexual orientation, political or religious views" and more. 685 F. Supp. 3d 909, 941 (N.D. Cal. 2023). Nothing of the sort is alleged here.

**E. Plaintiffs also have not and cannot state a claim under CIPA § 638.51(a).**

The technologies here are not pen registers. Interpreting Section 638.51 to include devices that intercept both record information and the communications violates at least two tenets of statutory interpretation. First, LinkedIn respectfully submits that Plaintiffs' proffered interpretation, which is based on this Court's interpretation of the statute in *Meta Pixel*,

contradicts the plain language of Section 638.50(b), which defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, *but not the contents of a communication*." Cal. Penal Code § 638.50(b); 793 F. Supp. 3d 1147 (N.D. Cal. 2025). If the statute were "interpreted to define a pen register as any device that records 'dialing, routing, addressing, or signaling information' while clarifying that a device that records *only* 'the contents of a communication' is not a pen register," 793 F. Supp. 3d at 1153 (emphasis in original), the "but not the contents of a communication" clause would be superfluous. It cannot be that the definition of a pen register would be the same if the clause were removed from the statute. *See In re Eastport Assocs.*, 935 F.2d at 1080.

Moreover, if, as this Court held in *Meta Pixel*, "the relevant statutory language [of Section 638.50(b)] is ambiguous," 793 F. Supp. 3d at 1153, then the rule of lenity ought to apply here, *Eating Recovery*, 806 F. Supp. 3d at 1112 (rule of lenity applies to interpreting CIPA); *People v. Nuckles*, 56 Cal. 4th 601, 611 (2013) ("ambiguity in a criminal statute should be resolved in favor of lenity"). The Court was not presented with this argument in *Meta Pixel*, and Plaintiffs do not dispute that the rule of lenity ought to apply here. They also do not dispute, nor could they, that their interpretation expands both criminal and civil liability. As explained in *Eating Recovery*, because "language of CIPA is a total mess" and the many conflicting rulings interpreting its language leaves companies with "no way of telling whether their online business activities will subject them to liability," "courts should generally resolve CIPA's many ambiguities in favor of the narrower interpretation." 806 F. Supp. 3d at 1112.

Further, Plaintiffs' suggestion that *Meta Pixel* holding automatically applies here because "this case involves the same technology" is misplaced. Opp. at 21. The allegations in this Complaint are distinguishable from the allegations in *Meta Pixel*. The *Meta Pixel* plaintiffs alleged that "the various functionalities within the Meta Pixel operate independently from one another," so "the process that records metadata in a pen register-like manner is a separate 'device' or 'process' from the one that collects the contents of users' communications." *Id.* at 1155. Those allegations informed the court's analysis of the scope of the pen register definition. The

Complaint here contains no such allegations.

Finally, and in any case, Plaintiffs' failure to plead that they interacted with both Facebook and LinkedIn Learning in a manner that would have enabled the interception of this information is independently fatal to their claim. *See supra* Section II.A.

**F. The one-party consent rule bars Plaintiffs' ECPA claim.**

"[T]he consent of one party is a complete defense to a Wiretap Act claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014); *see also* 18 U.S.C. § 2511(2)(d). Plaintiffs do not dispute that LinkedIn was a party to the relevant communications, but they try to circumvent this categorical bar on their ECPA claim by arguing that (1) the one-party consent rule "does not apply to entities that procure another to violate the ECPA," Opp. at 22, and (2) that the crime-tort exception applies.[6] Both arguments fail.

***Procurement exception.*** There is no "procurement exception" to the ECPA's one-party consent rule. Plaintiffs ask this Court to create this exception out of whole cloth. They fail to cite *any* legal authority supporting this novel theory and LinkedIn has found none. Plaintiffs' reading of the statute would have this Court find that Congress intended to absolve the liability of the party who intentionally intercepts a communication (here, Meta or Adobe) if one party consents to the interception, while still holding the procuring party (LinkedIn) criminally liable. This would yield an absurd result, and "[s]tatutory interpretations which would produce absurd results are to be avoided." *United States v. LKAV*, 712 F.3d 436, 440 (9th Cir. 2013). Plaintiffs also ignore the court holdings dismissing "procurement" actions just like the one alleged here (i.e. where the defendant embedded third-party tracking pixels on their website) precisely because they are "barred pursuant to the one-party consent provision." *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024); *see also J.S.*, 2026 WL 1483490, at *4; *Gaige v. Exer Holding Co., LLC*, 2025 WL 559719, at *5 (C.D. Cal. Jan. 30, 2025).

***Crime-tort exception.*** Plaintiffs' effort to invoke the crime-tort exception also fails. In

[6] Plaintiffs wrongly argue that LinkedIn waived its argument as to both of these issues. LinkedIn does not have an obligation to anticipate or pre-rebut every argument Plaintiffs may raise in their Opposition. Further, if Plaintiffs insist on a rule of strict waiver here, then they have conceded the validity of numerous arguments that LinkedIn made in their Motion that they have failed to respond to in their Opposition. *See Jones*, 2022 WL 1137089, at *2 (citing cases).

determining whether the crime-tort exception applies, the "focus is . . . upon whether the purpose for the interception—its intended use—was criminal or tortious." *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202 (9th Cir. 1999) (original emphasis); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (exception applies only where "the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously."). Moreover, the "criminal or tortious purpose must be separate and independent from the act of the [alleged unauthorized] recording." *Planned Parenthood Fed'n of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022). The weight of authority from this Circuit holds that the crime-tort exception is improper here for three independent reasons.

***First***, the Complaint contains no well pleaded facts that LinkedIn's "primary motivation or a determining factor" for allegedly procuring the intercepted communications was to "injure plaintiffs tortuously." *Katz-Lacabe*, 668 F. Supp. 3d at 945. The single "fact" that Plaintiffs cite from their Complaint is the conclusory allegation that LinkedIn "procured Meta and Adobe to intercept Plaintiffs and Nationwide Class members' communications for the purpose of violating the VPPA, the CIPA and the privacy rights of Plaintiffs and class members." Opp. at 24, citing Compl. ¶ 82. Courts have found nearly identical allegations insufficient. *See, e.g., Merical v. The Joint Corp.*, 2026 WL 2225531, at *15 (E.D. Cal. Aug. 3, 2026) (crime-tort exception inapplicable where "Plaintiff has made a conclusory allegation that 'Defendant intentionally intercepted the contents of Plaintiff's and Class Members' electronic communications for the purpose of committing a criminal or tortious act in violation of the Constitution or laws of the United States or of any state, namely, invasion of privacy.'"); *Doe v. Talkiatry Mgmt. Servs., LLC*, 816 F. Supp. 3d 1206, 1210 (C.D. Cal. 2026) (crime-tort exception inapplicable because "nowhere in the SAC do the facts suggest that Defendant intercepted and/or disclosed this information with violations of HIPAA as the 'primary motivation or a determining factor.'").

***Second***, Plaintiffs' sole conclusory allegation is contradicted by other allegations in the Complaint regarding the primary purpose of the alleged interceptions. Plaintiffs plead that "Meta generates revenue by selling advertising space on the Facebook platform" and, specifically, by allowing "advertisers, like Defendant" to "build 'Custom Audiences'" through integrating the

Meta Pixel into their websites and gathering information about their users to create targeted more effective advertisements. Compl. ¶¶ 16-19. In other words, the Complaint alleges that LinkedIn's motivation is to facilitate advertising and make money. But the crime-tort exception does not apply where the alleged motivation is "to make money" through targeted advertising. *Rusow v. Skinspirit Essential LLC*, 2025 WL 4657637, at *15 (N.D. Cal. Oct. 15, 2025) (crime-tort exception inapplicable where the purpose of the interception was "to monetize that data for targeted advertising"); *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024) ("the crime-tort exception is inapplicable where a defendant's primary motivation is to make money rather than to injure plaintiffs tortiously or criminally"); *Doe I* , 741 F. Supp. 3d at 843 (same). In *J.S.*, the court found the crime-tort exception inapplicable where, as here, "[o]ther than reciting the requirements of the crime-tort exception—'Defendant intercepted and disclosed Plaintiff's protected communications for the purpose of committing criminal and tortious acts, including violations of federal and state law,'—the only 'purpose' J.S. alleges throughout the FAC is financial gain." 2026 WL 1483490, at *3. This Court should find the same.[7]

***Third***, even accepting Plaintiffs' conclusory allegation as true, the crime-tort exception cannot apply here because "the alleged tortious or criminal activities are not independent from the intentional act of intercepting; they are the interception itself." *Rusow*, 2025 WL 4657637, at *15. As the court found in *Kaiser Foundation* when rejecting plaintiffs' argument that the interception occurred "for the purpose of violating HIPAA," "this argument is contrary to *Sussman* which holds that the act of interception itself cannot be the crime or the tort." *Doe v. Kaiser Found. Health Plan, Inc.,* 2024 WL 1589982, at *10 (N.D. Cal. Apr. 11, 2024). So too here, as the alleged violations of VPPA and CIPA "are the interception itself."

## III. CONCLUSION

For the forgoing reasons, LinkedIn requests that the Court grant this Motion to Dismiss.

[7] Plaintiffs cite only one case involving the disclosure of video watching behavior with a contrary result: a district court opinion from Illinois. Opp. at 25 (citing *AD v. Aspen Dental Mgmt*). Of the others cited, most are from outside of this District and involve HIPPA.

Dated: September 1, 2026

KEKER, VAN NEST & PETERS LLP

By: /s/ *Matan Shacham*

BENJAMIN BERKOWITZ
MATAN SHACHAM
CHRISTINA LEE
SPENCER MCMANUS
ROBYN PARISER

Attorneys for Defendant LINKEDIN CORPORATION